## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LAUREN WEINER and DEBORAH PEARLMAN, each individually, as personal representatives of the estates of Mathew Silberman and Jamie Draper, and on behalf of all others similarly situated,<br><br>PLAINTIFFS,<br><br>v.<br><br>LEGACY TOUCH, INC., GLUECKERT FUNERAL HOME, LTD., and KRISTAN FUNERAL HOME P.C.,<br><br>DEFENDANTS. | 3:24-cv-01827-DWD<br><br>JURY TRIAL DEMANDED |

## <u>AMENDED CLASS ACTION COMPLAINT</u>

1.      Plaintiffs Lauren Weiner and Deborah Pearlman (collectively "Plaintiffs") each in their individual capacity, in their capacity as the Personal Representative of the estates of Mathew Silberman and Jamie Draper, and on behalf of a Class of similarly situated individuals, by and through their attorneys, bring the following Class Action Complaint ("Complaint") pursuant to Rule 23 of the Federal Rules of Civil Procedure against Defendant Glueckert Funeral Home, Ltd. and Defendant Kristan Funeral Home P.C. (collectively "Funeral Homes") and Legacy Touch, Inc. ("Legacy Touch"), their subsidiaries and affiliates, (collectively "Defendants").

2.      Plaintiffs allege as follows upon personal knowledge as to their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys:

1

## I.    NATURE OF THE ACTION

3.    This case arises out of an unthinkable and unconscionable breach of trust and privacy by Defendant Funeral Homes and Legacy Touch, Inc., entities that present themselves as trustworthy partners during the most vulnerable times of grief and loss yet exploit this relationship and deprive families of their right to make an informed decision about the final arrangements and dispositions of the deceased.

4.    Plaintiffs and the potential class members entrusted the remains of deceased, often their loved ones, to Defendant Funeral Homes, trusting and expecting that those remains would be treated lawfully and with the utmost dignity and respect. However, to their absolute shock and distress, Plaintiffs have learned that Defendants manipulated their loved one's remains to unlawfully collect, capture, receive, obtain, store, disclose, and misuse their biometric identifiers and biometric information, specifically fingerprints, without complying with their legal, professional, and ethical duties.

5.    Instead of preparing the remains of the deceased lawfully and with dignity and respect, Defendant Funeral Homes captured and collected their fingerprints to bombard Plaintiffs and similarly situated individuals with unsolicited emails containing targeted advertisements from Legacy Touch, encouraging them to buy merchandise featuring the fingerprints of those who have passed, even after many years.

6.    This case highlights a concerning trend in the mishandling and exploitation of biometric data. Companies like Defendant Funeral Homes and Legacy Touch, Inc. exploit

sensitive biometric data[1] for commercial gain, disregarding the emotional vulnerability of grieving families and prioritizing profit over their legal, professional, and ethical duties.

7.      Legacy Touch, Inc. encourages its partner funeral homes and cremation facilities to collect fingerprints without knowledge or prior express consent to maximize profits, thereby violating the legal, professional, and ethical duties owed by funeral providers. The commercial exploitation of this information for profit, as demonstrated in this case, underscores the emotional harm and distress caused by such practices, and the need for redress.

8.      This action seeks to address the serious and ongoing privacy and biometric data breach threat posed by Defendants' actions. Plaintiffs, each in their individual capacity, in their capacity as the Personal Representatives of estates, and on behalf of all others similarly situated, seek justice, accountability, and to shine a light on these unlawful and despicable practices and procedures.

9.      Defendants have demonstrated a brazen disregard for their customers' privacy rights and have violated the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, by, among other things, (a) failing to develop, publicly disclose, and comply with a retention schedule and guidelines for destroying the biometric data they collect; (b) failing to inform customers in writing about the specific purpose and timeframe of the collection, storage, and use of biometric data; and (c) collecting, storing, and using biometric data without first obtaining a written release executed by the customers, (d) disclosing and (e) profiting from the data.

10.     Defendants' conduct denies consumers the right to make informed decisions about the collection of biometric identifiers and information, compromising their privacy and security.

---

[1] In this Complaint, Plaintiffs use the catch-all term "biometric data" to encompass the statutory terms "biometric information" and "biometric identifier" as defined in 740 ILCS 14/10.

11.     Accordingly, this Complaint seeks an order declaring Defendants' conduct to be unlawful; requiring Defendants to cease the unlawful activities discussed herein; damages, injunctive relief, and any other available legal or equitable remedies for violations of the Illinois Biometric Information Privacy Act (BIPA), 740 ILCS 14/1 *et seq.*; the Illinois Consumer Fraud and Deceptive Business Practices Act (ILCFA), 815 ILCS 505/1 *et seq.* and similar consumer protection laws in other states; other common law causes of action resulting from the illegal actions of Defendants in intentionally, recklessly, negligently collecting, capturing, storing, using, and profiting from biometric data without the prior consent of the deceased individual's legally authorized representative.

## II.    PARTIES

12.     Named Plaintiff Lauren Weiner is, and at all times relevant hereto has been a resident and citizen of Palatine, Illinois, located in Cook County.

13.     Named Plaintiff Deborah Pearlman is, and at all times relevant hereto has been a resident and citizen of Lake Villa, Illinois, located in Lake County.

14.     Defendant Glueckert Funeral Home, Ltd. ("Glueckert Funeral") is incorporated under the laws of the State of Illinois with its principal place of business located at 1520 N. Arlington Heights Rd., Arlington Heights, IL 60004. Glueckert Funeral is a funeral provider and sells or offers funeral goods directly to the public for use in connection with funeral services. Glueckert Funeral transacts or has transacted business in this District. At all times relevant to this Complaint, acting alone or in concert with others, Glueckert Funeral has advertised, marketed, distributed, offered to sell, or sold funeral goods and services to consumers in Illinois.

15.     Defendant Kristan Funeral Home P.C. ("Kristan Funeral") is incorporated under the laws of the State of Illinois with its principal place of business located at 219 West Maple Ave.,

Mundelein, Illinois 60060. Kristan Funeral is a funeral provider and sells or offers funeral goods directly to the public for use in connection with funeral services. Kristan Funeral transacts or has transacted business in this District. At all times relevant to this Complaint, acting alone or in concert with others, Kristan Funeral has advertised, marketed, distributed, offered to sell, or sold funeral goods and services to consumers in Illinois.

16.     Defendant Funeral Homes have a responsibility to properly care for, protect and respect the remains of individuals who have been entrusted to them for funeral services.

17.     Defendant Funeral Homes unlawfully, fraudulently, unfairly, or misleadingly authorized or allowed taking fingerprints of deceased persons in their care, whether intentionally, recklessly or negligently, without the knowledge or prior consent of the deceased's legally authorized representative.

18.     Defendant Legacy Touch, Inc. is incorporated under the laws of the State of Missouri with its principal place of business located in Lee's Summit, Missouri. Legacy Touch transacts or has transacted business in this District. At all times relevant to this Complaint, acting alone or in concert with others, Legacy Touch advertised, marketed, distributed, offered to sell, or sold funeral goods and services to consumers in Illinois and throughout the United States.

## III.     JURISDICTION

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because this civil action is a class action in which the matter in controversy exceeds $5,000,000.00 exclusive of interest and costs, and Plaintiff, and most members of the Classes are citizens of states different from any Defendants.

20.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, and Defendants are subject to the Court's personal jurisdiction.

21.     As a result of Defendants' egregious conduct and unlawful collecting and using of fingerprints, Defendants obtained the benefits of the laws of Illinois and profited from Illinois commerce.

22.     Defendants conducted systematic and continuous business activities in and throughout the State of Illinois and otherwise intentionally availed themselves of the markets of the State of Illinois.

## IV.    FACTUAL BACKGROUND

### A.  Regulation of the Funeral Industry

23.     The funeral industry in the United States is subject to numerous regulations designed to protect consumers and ensure ethical practices. One of the primary regulatory frameworks at the federal level is the Federal Trade Commission ("FTC") Funeral Rule.

24.     Enacted in 1984, the Funeral Rule aims to protect consumers during one of the most difficult times in their lives—the death of a relative. The Funeral Rule requires funeral service providers to provide clear, itemized pricing information and to inform consumers about their rights when making funeral arrangements.

25.     Under the FTC Funeral Rule, "funeral goods" are defined as the goods which are sold or offered for sale directly to the public for use in connection with funeral services. A "funeral provider" is any person, partnership, or corporation that sells or offers to sell funeral goods and funeral services to the public. "Funeral services" are any services which may be used to care for and prepare deceased human bodies for burial, cremation, or other final disposition, and to arrange,

6

supervise, or conduct the funeral ceremony or the final disposition of deceased human bodies. 16 C.F.R. § 453.1.

26.    In addition to federal regulations, the State of Illinois has enacted its own set of laws governing the funeral industry to further protect consumers and ensure the professionalism and integrity of funeral service providers. The primary statute regulating the funeral industry in Illinois is the Funeral Directors and Embalmers Licensing Code, 225 ILCS 41/1-1 *et seq.* This Code establishes the standards and requirements for the licensing and practice of funeral directors and embalmers within the state. The Code emphasizes that the practice of funeral directing and embalming in Illinois affects public health, safety, and welfare and is subject to regulation and control in the public interest.

27.    Among other things, the Code outlines the ethical and professional standards that licensed funeral directors and embalmers must follow. This includes the proper handling and disposition of human remains, adherence to health and safety regulations, and maintaining accurate and confidential records. Additionally, it prohibits deceptive practices and ensures that consumers are fully informed about their rights and options when making funeral arrangements.

28.    Section 225 Ill. Comp. Stat. Ann. 41/1-5 of the Code underscores the importance of appropriate observance and respect in the preparation, care, and final disposition of deceased human bodies, highlighting the need for reverent care for the human body, consideration for those bereaved, and the maintenance of spiritual dignity:

> The practice of funeral directing and embalming in the State of Illinois is declared to be a practice affecting the public health, safety and welfare and subject to regulation and control in the public interest. It is further declared to be a matter of public interest and concern that the preparation, care and final disposition of a deceased human body be attended *with appropriate observance and understanding, having due regard and respect for the reverent care of the human body and for those bereaved and the overall spiritual dignity of every person.* It is further a matter of public interest that

the practice of funeral directing and embalming as defined in this Code merit and receive the confidence of the public and that only qualified persons be authorized to practice funeral directing and embalming in the State of Illinois. This Code shall be liberally construed to best carry out these subjects and purposes.

225 Ill. Comp. Stat. Ann. 41/1-5 (emphasis added).

### B.  Requirements of the Illinois Biometric Information Privacy Act

29.    Biometrics typically refers to measurements and behavioral characteristics derived from human biology, such as facial geometry, iris scans, voiceprints, and fingerprints. Unlike other identifiers such as passwords or Social Security numbers, which can be changed, biometrics represent some of the most personal and unique information about an individual due to their distinctiveness and permanence.

30.    Businesses are increasingly adopting biometric technology for various purposes, including authenticating identities, enhancing business security, monitoring employee work time, examining shopper behavior, and facilitating financial and retail transactions.

31.    However, the collection, use, disclosure, and storage of biometric data present significant privacy and security challenges because, if compromised, individuals cannot change their biometric data.

32.    For example, the FTC has cautioned that "Large databases of biometric information may also be attractive targets for malicious actors because of the information's potential to be used for other illicit purposes, including to achieve further unauthorized access to devices, facilities or data."

33.    In response to these unique risks, states have enacted laws specifically focused on biometric data handling and protection. One of the most prominent laws in this area is the Illinois Biometric Information Privacy Act (BIPA), 740 ILCS 14/1, *et seq.*

34.    In enacting BIPA, the Illinois legislature recognized the full ramifications of biometric technology are not yet fully known and the public will benefit from "regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(f) to (g).

35.    BIPA defines the term "biometric identifier" to mean "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. "Biometric information" means "any information, regardless of how it is captured, converted, stored, or shared, based on an individuals' biometric identifier used to identify an individual." *Id.*

36.    Among other things, section 15(b) of BIPA prohibits a private entity from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifier or biometric information, unless it first informs the subject or the subject's legally authorized representative in writing that biometric data is being collected or stored, the specific purpose, and the length of time the private entity will retain the biometric data. 740 ILCS 14/15(b).

37.    Relatedly, section 15(a) requires that private entities establish a retention schedule and guidelines for permanently destroying biometric data once the purpose for collecting it is satisfied, or within three years of the individual's last interaction with the private entity. 740 ILCS 14/15(a).

38.    In addition, BIPA prohibits a private entity from selling, leasing, trading, or otherwise profiting from a person's biometric data, 740 ILCS 14/15(c), and from disclosing, redisclosing, or otherwise disseminating that data, unless the subject or their legally authorized representative consents or other circumstances not relevant here apply, 740 ILCS 14/15(d).

**C. Defendant Funeral Homes and Legacy Touch obtain, use, and store biometric data in violation of BIPA.**

   ***1.  Legacy Touch, Inc. Background***

39.    Founded in 2008, "Legacy Touch's primary business is as a provider of customized jewelry and keepsakes and related technologies to funeral homes, other funeral professionals, their customers, and other consumers."

40.    Legacy Touch offers a variety of personalized memorial products, including pendants, rings, bracelets, keychains, and other items featuring fingerprint impressions (the "Fingerprint Keepsakes").

41.    Legacy Touch relies on a nationwide network of funeral providers, including Defendant Funeral Homes, to obtain the fingerprints featured in its merchandise and to acquire sales leads.

42.    Legacy Touch markets its services to funeral providers to increase revenues while providing comfort to families and Personal Representatives.

*Figure 1: Marketing statement from Legacy Touch promoting their personalized fingerprint jewelry*

43.    Funeral providers can become part of Legacy Touch's network through different methods, such as signing up on its website. Once the funeral provider joins the network, they gain access to the Legacy Touch Partner Portal, which includes "LT University," a training and resource center for all things related to Legacy Touch.

44.    The portal features videos and resources designed to help funeral providers seamlessly integrate the fingerprint capture process, described below, into their services. For example, one video provides step-by-step instructions for setting up the LT SmartScan, a device that captures high-quality fingerprints and automatically generates Personal Identification Numbers (PINs). Another video explains the Family Connection Program, an automated program that sends families the PIN associated with one's fingerprints, along with automated reminders about fingerprint keepsake opportunities, special offers, and new products on behalf of the partner.



*Figure 2: Marketing statement from Legacy Touch highlighting the benefits of obituary PIN integration to increase orders for personalized jewelry by up to 2x.*

*Figure 3: Legacy Touch SmartScan user instructions from the LT partner portal, detailing the equipment and steps needed to scan and upload fingerprint images for personalized keepsake creation.*

# Ink Fingerprinting Instructions

The Legacy Touch Ink Fingerprint process is provided to you as a backup to the Legacy Touch Digital Capture Options. Follow the steps below to create Decedent Records at Portal.LegacyTouch.com.

This same process can be used for any other ink prints you may already have on file by following steps two and three to immediately receive a PIN number for that Decedent.

 ### Collect Fingerprints
LEGACY TOUCH INK FINGERPRINT CARD

We've provided a card to transfer Decedent ink fingerprints, footprints, and handprints to. Please follow the card instructions, filling out pertinent fields and providing at least three fingerprint impressions.

**NOTE:** Our ink fingerprint kit features an "ink-less" ink pad. It creates a permanent black print even though the ink residue can be easily wiped from fingers.



*Figure 4: Legacy Touch Ink Fingerprinting instructions providing a step-by-step guide for collecting fingerprints using the Legacy Touch ink fingerprint card as a backup to digital capture options*

## 2. Fingerprint Capturing Process

45.     Legacy Touch supplies Defendant Funeral Homes and other funeral providers with hardware, software, and other technology designed to capture fingerprints, including a detachable tethered fingerprint scanner, a QuickDock Scanner attachment for iOS devices, Android and Apple iOS applications, physical fingerprinting kits, and detailed instructions and support materials.

13



*Figure 5: Screenshots from Legacy Touch iOS App on the Apple App Store.*

46.    The LT Partner Portal, www.ltportal.legacytouch.com, contains comprehensive guides for different fingerprint capture methods to ensure funeral providers capture clear and accurate fingerprint images that Legacy Touch can use.

47.    The Fingerprint Capture Instructions for each method are summarized below:

a) **LT SmartScan Fingerprint Capture Instructions**: The LT SmartScan method utilizes an Android tablet connected to a detachable tethered fingerprint scanner via a USB adapter. The process involves downloading the Legacy

14

Touch App from the Google Play Store, connecting to Wi-Fi, and signing into a Google account associated with the business. Fingerprints are captured by pressing the fingers onto the tethered scanner, and a Personal Identification Number (PIN) is automatically generated in the Partner Portal. When using this method, Legacy Touch recommends that funeral providers "do not establish a security measure . . . since multiple people in your funeral home will likely need to use this tablet to capture prints."

b) **iOS + QuickDock Fingerprint Capture Instructions**: The iOS + QuickDock method uses an iPod Touch or iPhone with the QuickDock Scanner attachment. The process involves downloading the Legacy Touch App from the App Store. The user logs in to their account, selects "Create Enrollment," chooses the type of scan and finger they would like to scan, and "press finger firmly onto scan pad, making sure the finger is centered and touching multiple sides. Experiment with different pressures to get the best result. The higher the pressure, the darker the print will be." A PIN is automatically created in the Partner Portal. Funeral providers are exhorted to "Take prints as early in the process as possible. Always take prints BEFORE refrigeration and embalming."

c) **iOS + Camera Fingerprint Capture Instructions**: The iOS + Camera method involves using the camera on an iPod Touch or iPhone. The Legacy Touch App, downloaded from the App Store, is used to capture the fingerprints. The process involves aligning the camera to the finger using the App's viewfinder and capturing at least three fingerprint images per decedent. The captured images are used to generate a PIN in the Partner Portal. This method allows for digital

capture and storage of fingerprint images using the device's native camera. When using this method, Legacy Touch indicates it has "found that a light application of foundation makeup on the fingers helps highlight the detail of faint or worn fingerprints, making image capture quicker and easier." Funeral providers are exhorted to "Take prints as early in the process as possible. Always take prints BEFORE refrigeration and embalming."

d) **Ink Fingerprint Instructions**: The Ink Fingerprint method uses ink that can be easily wiped from fingers to capture fingerprints on a provided card. The captured fingerprints are then scanned using a flatbed scanner and uploaded to the Legacy Touch Partner Portal. The scanned fingerprint card is associated with a decedent record, and a PIN is generated. The process includes filling out pertinent fields on the card, scanning the card, and uploading the scanned image to create a digital record. This method provides a manual backup to the digital capture options offered by Legacy Touch.

48.    Legacy Touch recommends that funeral providers consistently "take 3-5 prints for each Decedent."

49.    Legacy Touch collects, receives or obtains the captured fingerprints as they are automatically or manually uploaded to the Legacy Touch Partner Portal, where they are processed to generate unique Legacy Touch PINs that link to the stored biometric data. This PIN is shared with the family for purchasing keepsakes or accessing additional services.

50.    The fingerprints are stored in Legacy Touch's cloud-hosted database.

51.     During the fingerprint capturing process, funeral providers supply Legacy Touch with the deceased person's name, date of birth, gender, date of death, time of death, place of death, and the next of kin's name and email address.

52.     Legacy Touch then leverages the deceased person's personal information and biometric data by creating and sending targeted advertising and sales materials to the family and friends of the deceased, encouraging them to keep their loved ones close by purchasing fingerprint keepsakes. The solicitations include each deceased person's unique Legacy Touch PIN.

53.     As a result of Defendants' conduct, Plaintiffs and similarly situated individuals are bombarded with unsolicited emails containing targeted advertisements from Legacy Touch, encouraging them to buy merchandise featuring the fingerprints, even after many years have passed since a death may have occurred.

### 3.   *Legacy Touch Provides Comprehensive Guidance and Legal Advice to Funeral Providers*

54.     Defendants systematically and surreptitiously collect, capture, store, use, and disclose fingerprints without first informing, seeking, or obtaining the required written release from the next of kin or legally authorized representatives of deceased individuals entrusted to their care.

55.     The documents provided by Legacy Touch to participating funeral providers exhort them to (a) capture the fingerprints as early in the process as possible without first informing, seeking, or obtaining the required written release from the next of kin or legally authorized representatives, and (b) deceive or mislead consumers by asking them for permission to take the fingerprints after they have been collected.

56.     For example, the document titled "Liability of Fingerprint Collection" from May 2023, accessible through the link "Legal Support for Fingerprint Collection," states: "Since there

17

is no law prohibiting a business from taking a preliminary print of the Deceased, your business can take prints from each Decedent upon every removal and *then ask for permission when you meet the family*." (emphasis added).

57.    This "collect first and asking for permission later" practice contradicts itself by acknowledging the need to ask for permission. However, asking for permission after the fact does not rectify the initial unauthorized capture, the manipulation of the bodies, and the invasion of privacy.

58.    In support of this unlawful and unethical practice, Legacy Touch asserts that "the funeral profession is trending toward capturing prints for every family. *Then, after prints are taken, letting the family know* that you took the prints and why." (emphasis added). Legacy Touch provides no evidence or citations to substantiate this claim.

59.    Legacy Touch is aware that "this practice has a potential risk to upset the family since you took the print without asking first." To address this issue, Legacy Touch provides a Family Notification Template that further deceives and misleads consumers and downplays the unauthorized collection of biometric data. The template letter reads:

> Dear John,
>
> Thank you for the confidence you placed in us when you entrusted us with the care of your wife, Jane. At the time that we transferred your wife into our care, we took a digital scan of her fingerprint and committed it to very safe storage in the cloud at Legacy Touch.
>
> We took the liberty to do this for you because many of the families we serve today eventually choose to have their loved one's fingerprint transferred to a piece of jewelry, thereby keeping their memory only a touch away.
>
> Legacy Touch is a company we are pleased to be associated with simply because of the high quality of their products and the ease in which they are to work with. In the event that you ever choose to select a pendant, charm or ring with Jane's fingerprint, I am enclosing a copy of their brochure along with an order form. All orders are processed only through you and Legacy Touch in the comfort and privacy of your own home.

I am of course available at any time to answer any questions you may have.

Most Sincerely,

Funeral Director Name
Funeral Home Name

60.    This patronizing template letter confirms that Defendants are making unilateral decisions on behalf of consumers, seeks to imply that Defendants' judgment is inherently superior, misleads about the routine or standard nature of the unethical practice of fingerprinting without consent, and disregards consumers' right to be informed and to make their own decisions regarding ones memory and privacy.

61.    Defendants' unlawful practices are expressly contradicted by statements in the Fingerprint Capture Liability document, which acknowledges that Funeral Trade Associations believe funeral providers should ask for permission from the legal next of kin prior to taking prints: "Recently, a number of Funeral Trade Associations have said they believe funeral providers should ask for permission from the legal next of kin prior to taking prints. This is based on the belief that a funeral provider should receive consent before doing anything to the Deceased."

62.    Defendants' disregard for these industry standards and legal requirements further underscores their intentional and deliberate violation of BIPA and their choice to prioritize their business interests over the legal and emotional rights of the families involved.

63.    Defendants' omissions are not an oversight, but a deliberate strategy aimed at minimizing the risk of losing a potential sale and sidestepping their legal, professional, and ethical requirements. It reflects Defendants' calculated decision to prioritize business operations over compliance with legal, professional, and ethical requirements.

64.    Funeral providers, including Defendant Funeral Homes, enter into agreements with Legacy Touch that include financial incentives and commissions for every keepsake ordered

through Legacy Touch as a result of a fingerprint captured and transmitted. According to Legacy Touch's marketing materials, the average order amount is $480, and the funeral provider receives a $105 commission.



# Loved By Funeral Homes, Trusted by Families

Earn more revenue and make families happier.

- Average order amount of $480, with $105 in commission
- 23% of orders are followed by at least one additional order
- Less than 1% return rate compared to 8% average on ecommerce jewelry
- 99% on-time shipments
- 24-hour turnaround on orders so families can have their Keepsakes for the service*

*Shipping times may vary for the holidays

*Figure 6: Legacy Touch marketing statement emphasizing their popularity with funeral homes and families, highlighting the revenue benefits and satisfaction metrics of their personalized jewelry services.*

### 4. Defendants Failed to Implement, Publicize, and Adhere to a Retention and Destruction Policy.

65.     Despite collecting, using, and storing biometric data, Defendants conduct this entire process, from the initial capture of fingerprints to the final storage and use of the biometric data, in violation of the statutory requirements under BIPA for the collection, retention, disclosure, and destruction of a person's or customer's biometric identifiers or biometric information.

66.     Legacy Touch obtains and stores biometric data in its cloud database. The Family Notification Template and the Fingerprint Capture Liability document both confirm that Legacy Touch holds these fingerprints and can access them freely to create keepsakes if someone orders them. As the entity storing and using the biometric data, Legacy Touch must develop, publicize, and comply with a retention schedule and destruction guidelines.

20

67.    However, Legacy Touch has not made public any notices establishing retention schedules or guidelines for permanently destroying the fingerprints. Legacy Touch's website is silent regarding its retention schedule or destruction guidelines.

68.    Furthermore, the continuous storage and use of the biometric data for sales and marketing purposes, even years after the decedent's passing, demonstrates non-compliance with the 3-year statutory timeframe for destroying the biometric data. This prolonged retention without adherence to a documented policy is a direct violation of BIPA.

69.    Defendant Funeral Homes collected the fingerprints and transmitted them to Legacy Touch, demonstrating their control over them. As entities that can access, manage, or utilize the biometric data at issue here, Defendant Funeral Homes are required to develop, publicize, and comply with a retention schedule and destruction guidelines. Despite this, Defendant Funeral Homes have not made public any notices establishing retention schedules or guidelines for permanently destroying the fingerprints. Their websites also do not contain any section 15(a) retention and destruction policies or any mention of Legacy Touch.

70.    Upon information and belief, Defendant Funeral Homes do not comply with their retention schedules and destruction guidelines or the 3-year statutory timeframe for destroying the biometric data.

71.    Defendants' conduct effectively denies Plaintiffs, putative Class members, and Illinois consumers of the ability and right to make an informed decision about whether to refuse Defendants' collection, storage, and use of biometric data in the first instance, as intended by BIPA.

**D. Defendants Engaged in Deceptive and Unfair Business Practices**

72.    Legacy Touch's business model revolves around the sale of personalized memorial items. The capture of fingerprints without consent directly facilitates their commercial enterprise, making this deception integral to their business operations.

73.    Legacy Touch and its partner funeral homes engage in deceptive and unfair practices by capturing fingerprints of the deceased without prior consent and then seeking retroactive permission. This is evidenced by the documentation provided by Legacy Touch, which suggests capturing prints upon removal and then informing the family later.

74.    The letter template provided by Legacy Touch to funeral homes reveals the deceptive nature of this practice, as it informs families after the fact, implying a misleading representation that such prints were taken as a courtesy without prior notification or consent.

75.    Legacy Touch intends for families to rely on deceptive or misleading statements by, among other things, presenting their fingerprint capture process as a standard and acceptable practice without requiring prior consent. This intent is evidenced by their policy documents, which encourage funeral homes to capture prints preemptively and inform families afterward, knowing that this might cause emotional distress but framing it as beneficial to the families.

76.    The misrepresentations and omissions are material as they pertain to the privacy and consent rights of the families, which consumers would reasonably expect to be respected during such a sensitive time.

77.    The deceptive practices of Legacy Touch and its partner funeral homes occur in the course of conduct involving trade or commerce, as they are directly tied to the business of providing funeral services and selling biometric memorial products.

### E.  Facts Specific to Named Plaintiffs

#### 1.  *Plaintiff Lauren Weiner*

78.    Plaintiff Lauren Weiner resides in Palatine, Illinois, and is the legally authorized individual responsible for making decisions on behalf of her late son, Mathew Silberman. Her son, who was an Illinois citizen, passed away on December 12, 2022. At that time, Plaintiff Weiner was deeply affected and distressed by her recent loss.

79.    Defendant Glueckert Funeral is a funeral provider and consistently presents itself as a caring, understanding, and compassionate provider capable of treating families and friends with dignity and respect during difficult times.

80.    Plaintiff Weiner entrusted her son's remains to Glueckert Funeral, expecting them to be treated with dignity and respect.

81.    However, Plaintiff Weiner began receiving solicitations via email inviting her to purchase jewelry and/or keepsakes that would feature her deceased son's fingerprint. The solicitations included a Legacy Touch PIN number to ensure that the correct fingerprints were used for any purchased personalized jewelry or keepsakes—indicating that Glueckert Funeral had collected and uploaded her son's fingerprints to Legacy Touch's servers.

82.    Upon information and belief, Glueckert Funeral and Legacy Touch collected, captured, received through trade or otherwise obtained her son's fingerprints using one of the fingerprints capturing methods described above with the intent to profit from the sale of personalized keepsakes.

83.    Upon information and belief, this all occurred "as early in the process as possible. Always take prints BEFORE refrigeration and embalming," meaning before informing, seeking, or obtaining a written release from Plaintiff Weiner.

84.     Plaintiff Weiner was not informed in writing of the specific purpose or length of time for which Defendants collected, stored, used, and/or disseminated her son's biometric information and/or biometric identifiers.

85.     Plaintiff Weiner was not informed in writing of any biometric data retention policy developed by Defendants, nor was she informed whether Defendants will ever permanently delete the biometric information and/or biometric identifiers.

86.     Plaintiff Weiner has never been provided with, nor signed, a written release permitting Defendants to collect, store, use or disseminate her son's biometric data.

87.     Defendants never even informed Plaintiff Weiner by written notice or otherwise that she could prevent them from collecting or storing her son's biometric data.

88.     Plaintiff Weiner was never provided with an opportunity to prohibit or prevent Defendants from collecting, capturing, storing, or using her son's biometric data.

89.     Defendants knowingly engaged in this conduct, which was unconscionable, unfair, misleading, and deceptive, resulting in severe emotional distress for Plaintiff Weiner.

90.     Plaintiff Weiner continues to receive marketing materials from Legacy Touch, serving as a stark reminder of her loss and the unauthorized use of her son's biometric data.

### 2. Plaintiff Deborah Pearlman

91.     Plaintiff Deborah Pearlman resides in Lake Villa, Illinois, and is the legally authorized individual responsible for making decisions on behalf of her late daughter, Jamie Draper. Her daughter, who was an Illinois citizen, passed away on January 8, 2022. At that time, Plaintiff Pearlman was deeply affected and distressed by her recent loss.

92.     Defendant Kristan Funeral is a funeral provider and consistently presents itself as a caring, understanding, and compassionate provider capable of treating families and friends with dignity and respect during difficult times.

24

93.     Plaintiff Pearlman entrusted her daughter's remains to Kristan Funeral, expecting them to be treated with dignity and respect.

94.     However, Plaintiff Pearlman began receiving solicitations via email inviting her to purchase jewelry and/or keepsakes that would feature her deceased daughter's fingerprint. The solicitations included a Legacy Touch PIN number to ensure that the correct fingerprints were used for any purchased personalized jewelry or keepsakes—indicating that Kristan Funeral had collected and uploaded her daughter's fingerprints to Legacy Touch's servers.

95.     Upon information and belief, Kristan Funeral and Legacy Touch collected, captured, received through trade or otherwise obtained her daughter's fingerprints using one of the fingerprints capturing methods described above with the intent to profit from the sale of personalized keepsakes.

96.     Upon information and belief, this all occurred "as early in the process as possible. Always take prints BEFORE refrigeration and embalming," meaning before informing, seeking, or obtaining a written release from Plaintiff Pearlman.

97.     Plaintiff Pearlman was not informed in writing of the specific purpose or length of time for which Defendants collected, stored, used, and/or disseminated her daughter's biometric information and/or biometric identifiers.

98.     Plaintiff Pearlman was not informed in writing of any biometric data retention policy developed by Defendants, nor was she informed whether Defendants will ever permanently delete the biometric information and/or biometric identifiers.

99.     Plaintiff Pearlman has never been provided with, nor signed, a written release permitting Defendants to collect, store, use or disseminate her daughter's biometric data.

100.    Defendants never even informed Plaintiff Pearlman by written notice or otherwise that she could prevent them from collecting or storing her daughter's biometric data.

101.    Plaintiff Pearlman was never provided with an opportunity to prohibit or prevent Defendants from collecting, capturing, storing, or using her daughter's biometric data.

102.    Defendants knowingly engaged in this conduct, which was unconscionable, unfair, misleading, and deceptive, resulting in severe emotional distress for Plaintiff Pearlman.

103.    Plaintiff Pearlman continues to receive marketing materials from Legacy Touch, serving as a stark reminder of her loss and the unauthorized use of her daughter's biometric data.

**F.  Impact on Plaintiffs and Class Members and Legislative Responses**

104.    This case highlights a concerning trend in the mishandling of biometric data. Companies like Legacy Touch, believing they are immune, exploit this sensitive information for commercial gain, disregarding the emotional vulnerability of grieving families and prioritize profit over their legal, professional, and ethical duties.

105.    Over the last decade, the collection, use, storage, and disclosure of individuals' biometric data by private entities has exploded, leading to unique and complex privacy and security concerns. For example, when a database storing fingerprint data or other sensitive biometric data is compromised or breached, affected individuals are left vulnerable, with no means to prevent identity theft, unauthorized tracking, or other illegal uses of their personal information.

106.    The Federal Trade Commission underscores these risks, noting that "consumers face new and increasing risks associated with the collection and use of biometric information ....

Large databases of biometric information could also be attractive targets for malicious actors who could misuse such information."[2]

107.    As a result of the dangers associated with collection, use, storage, and disclosure of individuals' biometric data by private entities, various states have, or are in the process of, enacting new laws to prevent funeral providers, like Defendants, from collecting, capturing, receiving, obtaining, maintaining, storing or disclosing biometric data.

108.    As highlighted in a 2018 news article by the Boston Globe, families already suffering from grief are further traumatized when the funeral service providers they trusted in a time of need commercially exploit their loved ones' biometric data:

> A couple days after his father's death, a grief-stricken man named Eric escorted his 87-year-old mother to a Malden funeral home that specializes in cremations.
>
> They were there to pick up the ashes. For a few moments, they sat alone in a reception room. Then a funeral home representative arrived, handed them a sales brochure, and made a startling offer: Would they like to purchase jewelry featuring the fingerprint of their father and husband?
>
> . . .
>
> Eric said he cringed to think of a funeral home attendant physically manipulating his father's corpse to produce a fingerprint in the hope of selling an expensive pendant or charm.
>
> [I]n the days that followed, they felt increasingly offended and indignant.
>
> "I thought it was a serious violation of trust," Eric said. "It was an abuse of the sense of dignity we have for our father."[3]

---

[2] https://www.ftc.gov/news-events/news/press-releases/2023/05/ftc-warns-about-misuses-biometric-information-harm-consumers (last visited June 6, 2024).

[3] https://www0.bostonglobe.com/business/2018/05/27/sneaking-fingerprint-dead-body-sell-tokens/rWaRHHQ5nXIj0EDyjrbiMP/story.html (last visited June 6, 2024).

109.    Following this report, funeral regulators in Massachusetts, approved a policy requiring consent by next of kin or the legal representative for the removal of "personal materials" from a dead human body, including fingerprints or a DNA sample:

> Registered funeral directors may, from time to time, have cause to remove personal materials from dead human bodies, either for their own purposes or at the request of others.  In this regard, personal materials are not personal items, such as clothing, jewelry, and other personal effects.  Rather, such materials can include, for example, locks of hair, fingerprints, certain medical devices, or even a DNA sample.
>
> Due to the ethical obligation registered funeral directors have to treat the dead human bodies entrusted to them with respect, dignity, and privacy, and the trusting and confidential nature of the relationship with the next of kin, removal of personal materials may only occur with the prior consent of the next of kin or the legal representative of the decedent.  As part of that consent, registered funeral directors must state to whom and for what purpose the removal of personal material is sought. Any subsequent use would require a new consent. The Board strongly encourages that this consent to removal of personal materials be in writing, signed by the parties.[4]

110.    Similarly, on September 19, 2023, an Orlando, Florida news station reported, in part:

> Mark Cady-Archilla was shocked and confused to learn his deceased mother's fingerprints were given to an out-of-state jewelry company that then offered to sell him a keepsake using his mother's fingerprints.
>
> "I feel like my mother was violated. I really do," he said.
>
> . . .
>
> "I said tell me how in the world you got my mother's fingerprint. And he said, well, we do that. It's normal practice. I said who gave you all permission? My sister, my brother-in-law and three of my cousins were with

---

[4] https://www.mass.gov/lists/board-policies-and-guidelines-embalming-and-funeral-directing#:~:text=Policy%20%2318%2D01&text=Registered%20funeral%20directors%20may%2C%20from,jewelry%2C%20and%20other%20personal%20effects (last visited June 6, 2024).

me at the funeral home and nobody remembers this being discussed. I didn't sign off on anything. I didn't give permission," he said.[5]

111.     On December 20, 2023, Bloomberglaw.com further reported about Ms. Mark Cady-Archilla's fingerprints and Florida's interest in legislation, in part:

> "The mere idea that they would do that without my mother's permission, or my permission was an absolute assault to me," Cady-Archilla said.
>
> …
>
> The Florida legislation would require funeral establishments to disclose in writing what data they collect from a deceased person and why, as well as whether that data is sold to a third party. The disclosure would be provided to a legally authorized person, such as a surviving spouse or adult child, who could opt out of the sale of such data.
>
> . . .
>
> "When the funeral home came and took my mother's remains, I handed over to them absolute precious cargo and I expected them to treat her remains with dignity," Cady-Archilla said. "And whether they just took her fingerprints for record purposes or for selling them to a third party, I should be aware."[6]

112.     Florida is considering a bill which "would regulate how funeral homes collect biometric data, unique and immutable characteristics such as fingerprints, from bodies in their care." According to Bloomberglaw.com:

> The Florida bill would regulate how funeral providers collect biometric data, unique and immutable characteristics such as fingerprints, from bodies in their care. The effort is a new twist on growing legislative interest in biometric privacy. Laws in Illinois, Texas, and Washington already provide living residents with specific biometric privacy rights, and Massachusetts regulators have also grappled with how the $16 billion funeral industry should approach fingerprinting of the dead.[7]

---

[5]     https://www.wesh.com/article/florida-deceased-moms-fingerprints-keepsake/45191363     (last visited June 6, 2024).

[6]     https://news.bloomberglaw.com/privacy-and-data-security/florida-tests-waters-for-privacy-law-with-focus-on-dead-people (last visited June 6, 2024).

[7] *Id.*

113.   Legacy Touch and Defendant Funeral Homes infringed upon Plaintiffs' privacy rights and caused them significant emotional distress.

114.   Defendants' conduct not only breaches BIPA's legal requirements but also exploits the emotional vulnerability of grieving families, further underscoring the need for legal redress and enforcement of biometric privacy protections.

## V.    CLASS ACTION ALLEGATIONS

115.   Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following classes:

116.   Subject to confirmation, clarification and/or modification based on discovery to be conducted in this action, Plaintiffs seek to represent the following classes:

**National Class:**

Definition: All individuals who, within the statutory period, were subjected to Defendants' deceptive and unfair business practices and are the next of kin or legally authorized representatives of deceased individuals whose biometric identifiers, biometric information, or fingerprints were collected, captured, received, obtained, stored, sold, leased, traded, profited from, disclosed, redisclosed, or disseminated by or on behalf of Defendant Funeral Homes and/or Legacy Touch Inc. without prior consent.

**Illinois Consumer Fraud and Deceptive Business Practices Act Subclass:**

Definition: All individuals who, within the statutory period, were subjected to Defendants' deceptive and unfair business practices and are the next of kin or legally authorized representatives of deceased individuals whose biometric identifiers, biometric information, or fingerprints were collected, captured, received, obtained, stored, sold, leased, traded, profited from, disclosed, redisclosed, or disseminated by or on behalf of Defendant Funeral Homes and/or Legacy Touch Inc. without prior consent, in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 Ill. Comp. Stat. Ann. 505/1 et seq.

**BIPA Class:**

Definition: All individuals who are the next of kin or legally authorized representatives of deceased individuals whose biometric identifiers or biometric information were collected, captured, received, obtained, stored, sold, leased, traded, profited from, disclosed, redisclosed, or disseminated by or on behalf of

Defendant Funeral Homes and/or Legacy Touch Inc. in violation of the Illinois Biometric Information Privacy Act (BIPA), 740 ILCS 14/1 et seq., within the statutory period.

117.    Excluded from the Classes are Defendants, their employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliates of Defendants, Class Counsel and their employees, and the judicial officers and their immediate family members and court staff assigned to this case.

118.    Numerosity—Fed. R. Civ. P. 23(a)(1). The Classes are comprised of thousands of individuals who were Defendants' customers, the joinder of which in one action would be impracticable. The exact number or identification of the Class members is presently unknown. The identity of the Class members is ascertainable and can be determined based on Defendants' records.

119.    Predominance of Common Questions—Fed. R. Civ. P. 23(a)(2), 23(b)(3). The questions of law and fact common to the Classes predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

   a.    Whether Defendant Funeral Homes and Legacy Touch, Inc. collected, captured, stored, or used biometric identifiers or information without first obtaining the written consent of the legally authorized representatives of deceased individuals.

   b.    Whether Defendant Funeral Homes and Legacy Touch, Inc. disclosed the specific purpose and length of time for which the biometric identifiers or information were being collected, stored, and used.

   c.    Whether Defendant Funeral Homes and Legacy Touch, Inc. created and followed a publicly available written policy establishing a retention schedule and guidelines for the permanent destruction of biometric identifiers and information.

   d.    Whether Defendant Funeral Homes and Legacy Touch, Inc. destroyed the biometric identifiers or information in accordance with a retention schedule and guidelines or the statutory 3-year period.

   e.    Whether Defendant Funeral Homes and Legacy Touch, Inc. sold, leased, traded, or otherwise profit from biometric identifiers or information without obtaining the necessary written consent from legally authorized representatives.

f.  Whether Defendant Funeral Homes and Legacy Touch, Inc. disclosed, redisclosed, or otherwise disseminated biometric identifiers or information without obtaining the necessary written consent from legally authorized representatives.

g.  Whether Defendant Funeral Homes and Legacy Touch, Inc.'s BIPA violations were negligence, intentional, and/or reckless.

h.  Whether the Class members are entitled to statutory damages under BIPA for each violation.

i.  Whether Defendant Funeral Homes and Legacy Touch, Inc. made misleading representations and/or omissions regarding the collection, storage, and use of biometric identifiers or information.

j.  Whether the Defendants' marketing and sales practices related to personalized jewelry and/or keepsakes were misleading and/or unfair by collecting, storing, or using biometric identifiers or information without proper notice and consent.

k.  Whether Defendant Funeral Homes and Legacy Touch, Inc. violated consumer protection laws by failing to inform legally authorized representatives of the collection, storage, and use of biometric identifiers or information.

l.  Whether the legally authorized representatives had the right to possess and control the deceased's body.

m.  Whether the defendants interfered with this right by collecting, storing, or using biometric identifiers or information without consent.

n.  Whether Defendant Funeral Homes owed a fiduciary duty to the legally authorized representatives of deceased individuals.

o.  Whether Defendant Funeral Homes breached its fiduciary duty by improperly handling biometric identifiers or information.

p.  Whether the actions of Defendant Funeral Homes and Legacy Touch, Inc. caused emotional distress to the legally authorized representatives by interfering with their right to possess and control the deceased's body.

q.  Whether the Class members suffered damages as a result of the Defendants' conduct.

r.  Whether the Class members are entitled to injunctive relief to prevent future violations by the Defendants.

s.  Whether the Defendants' conduct warrants the imposition of punitive damages.

120.    Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other members of the Classes. Identical legal violations and business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

121.    Typicality—Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of those of the members of the Classes in that they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct.

122.    Adequacy—Fed. R. Civ. P. 23(a)(4); 23(g)(1). Plaintiffs will fairly and adequately represent and protect the interests of the Classes, have no interest incompatible with the interests of the Classes, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

123.    Predominance —Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes.

124.    Superiority—Fed. R. Civ. P. 23(b)(3). A class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class members' claims would be impracticable and individual litigation would be unduly burdensome to the courts.

125.    Plaintiffs and members of the Classes have suffered irreparable harm as a result of Defendants' bad faith, fraudulent, deceitful, unlawful, and unfair conduct. Because of the size of the individual Class members' claims, no Class member could afford to seek legal redress for the wrongs identified in this Complaint. Without the class action vehicle, the Classes would have no reasonable remedy and would continue to suffer losses, as Defendant continues to engage in the bad faith, unlawful, unfair, and deceptive conduct that is the subject of this Complaint, and Defendants would be permitted to retain the proceeds of its violations of law. Further, individual

litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

126.    Plaintiffs and the Classes do not anticipate any difficulty in the management of this litigation.

### CAUSES OF ACTION

### COUNT I
### Violation of BIPA Section 15(a) - Failure to Institute, Maintain, and Adhere to Publicly Available Retention Schedule, 740 ILCS 14/15(a)

127.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

128.    BIPA section 740 ILCS 14/15(a) provides, in relevant part, that:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

129.    Defendants are private entities under BIPA.

130.    The fingerprints that Defendant Funeral Homes and Legacy Touch collected are biometric identifiers under BIPA. 740 Ill. Comp. Stat. Ann. 14/10.

131.    The digital and electronically stored version of Plaintiffs' deceased relatives' fingerprints constitute biometric information within the meaning of BIPA because BIPA defines 'biometric information' as "any information, regardless of how it is captured, converted, stored,

or shared, based on an individual's biometric identifier used to identify an individual." 740 Ill. Comp. Stat. Ann. 14/10.

132.    The Legacy Touch PIN numbers associated with each of Plaintiffs' deceased relatives' fingerprints constitute biometric information within the meaning of BIPA because BIPA defines 'biometric information' as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 Ill. Comp. Stat. Ann. 14/10.

133.    Plaintiffs are Decedents' surviving next of kin and the legally responsible and authorized individuals to make decisions on behalf of the deceased.

134.    Defendants are in possession of biometric identifiers or biometric information as evidenced by the fact that Plaintiffs received marketing materials from Legacy Touch featuring a PIN associated with their relatives.

135.    Defendant Funeral Homes collected the fingerprints and transmitted them to Legacy Touch. By taking control of the fingerprints during the collection process, Defendant Funeral Homes was in possession of biometric identifiers as it exercised control over the initial capture and subsequent transfer of this data.

136.    Legacy Touch collected, received, obtained, and stored the biometric data in its cloud database. The Family Notification Template and the Fingerprint Capture Liability document both confirm that Legacy Touch holds these fingerprints at its disposal and can access them freely to create the keepsakes if someone orders them. Legacy Touch's ability to store, access, and use the data for commercial purposes clearly places it in possession of biometric data.

137.    As the initial collectors of the biometric data, Defendant Funeral Homes had an obligation to ensure that a retention policy was in place. This includes either implementing its own

policy or ensuring that Legacy Touch's policy was compliant with BIPA. Plaintiffs were never presented information that Defendant Funeral Homes developed, maintained, or adhered to such a policy.

138.    By capturing and transferring the biometric data without ensuring the implementation of a retention and destruction policy, Defendant Funeral Homes failed to meet its statutory obligations.

139.    Upon information and belief, Defendant Funeral Homes are still in possession of biometric data.

140.    As the entity storing and using the biometric data, Legacy Touch had a direct obligation to develop a retention schedule and destruction guidelines. The absence of any publicly available policy detailing these practices indicates a failure to comply with BIPA's requirements. Furthermore, the continuous use of the biometric data for marketing purposes, even years after the decedent's passing, demonstrates non-compliance with the statutory timeframe for data destruction.

141.    Legacy Touch's ongoing retention and use of biometric data for commercial purposes indicate a clear failure to comply with the statutory requirements. The marketing materials sent to Plaintiffs, including solicitations years after their relatives' death, demonstrate that Legacy Touch did not destroy the biometric data within the mandated timeframe. This prolonged retention without adherence to a documented policy is a direct violation of BIPA.

142.    These failures were committed with full knowledge of the statutory requirements, demonstrating intentional disregard for obtaining proper consent and informing the affected parties. Defendant Funeral Homes' and Legacy Touch's actions in violating BIPA's provisions were knowing and willful, reckless, or alternatively negligent.

143.    As a direct and proximate result of the actions of Defendant Funeral Homes and Legacy Touch, Plaintiffs suffered significant emotional distress and invasion of privacy due to the unauthorized commercial exploitation of their deceased relatives' biometric data.

**COUNT II**
**Violation of BIPA Section 15(b) - Failure to Obtain Written Release Before Collecting, Receiving, Obtaining Biometric Identifiers or Information, 740 ILCS 14/15(b).**

144.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

145.    BIPA section 740 ILCS 14/15(b) prohibits a private entity from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifier or biometric information unless it first:

(1) Informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) Informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) Receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

146.    Defendants systematically collected, captured, purchased, received through trade, or otherwise obtained the biometric identifiers or biometric information of Plaintiffs' deceased relatives without first informing Plaintiffs in writing that they would collect, capture, purchase, receive through trade, or otherwise obtain said biometric identifiers or biometric information, as evidenced by the Legacy Touch documents.

147.    Defendants failed to inform Plaintiffs in writing of the specific purpose for which their relatives' fingerprints were being collected, stored, and used.

148.    Defendants failed to inform Plaintiffs in writing of the specific length of term for which their relatives' fingerprints were being collected, stored, and used.

149.    Defendants failed to seek or obtain the legally required written release from Plaintiffs before after collecting, capturing, purchasing, receiving through trade, or otherwise obtaining or storing Plaintiffs' deceased relatives' biometric identifiers or biometric information.

150.    Plaintiffs did not provide the legally required written release to Defendants before they collected, captured, purchased, received through trade, or otherwise obtained the biometric identifiers or biometric information of Plaintiffs' deceased relatives.

151.    These failures were committed with full knowledge of the statutory requirements, demonstrating intentional disregard for obtaining proper consent and informing the affected parties. Defendant Funeral Homes' and Legacy Touch's actions in violating BIPA's provisions were knowing and willful, reckless, or alternatively negligent.

## COUNT III
### Violation of BIPA Section 15(c) – Profiting from Biometric Identifiers and Information, 740 ILCS 14/15(c).

152.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

153.    Section 15(c) of BIPA provides that "No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 Ill. Comp. Stat. Ann. 14/15(c).

154.    Defendant Funeral Homes and Legacy Touch came into possession of the biometric identifier or information of Plaintiffs' deceased relatives.

155.    Defendants collect deceased's fingerprints without prior notice or consent, demonstrating a clear intent to use this biometric data for commercial purposes. Legacy Touch specifically uses the collected fingerprints to market and sell memorial keepsakes, such as pendants, charms, and rings, directly targeting grieving families like Plaintiffs here. By leveraging

the fingerprints to generate sales, Legacy Touch has engaged in a practice designed to profit from Plaintiffs' and putative class members' deceased relatives' biometric data.

156.    Even if no immediate sale occurs, the very act of using fingerprints to create and send targeted marketing materials constitutes an attempt to profit from individuals' biometric data. The marketing efforts are part of a broader strategy to generate long-term sales and customer engagement. The ongoing emails and mail solicitations sent to Plaintiffs and putative class members, which continue years after a death, demonstrate a sustained effort to capitalize on the biometric data collected. This constitutes "otherwise profiting" from biometric data as prohibited by BIPA Section 14/15(c).

157.    Defendants' conduct not only violates BIPA's legal requirements but also exploits the emotional vulnerability of grieving families, further underscoring the need for legal redress and enforcement of biometric privacy protections.

158.    The targeted advertising and sales materials sent to Plaintiffs included solicitations to purchase fingerprint keepsakes. These solicitations are directly linked to the possession and use of Plaintiffs' deceased relatives' biometric data. By encouraging Plaintiffs to buy products featuring her mother's fingerprint, Legacy Touch is generating revenue from the unauthorized use of this biometric data. The inclusion of unique Legacy Touch PIN in these solicitations further demonstrates the direct commercial exploitation of her biometric data.

159.    This conduct was undertaken intentionally, recklessly, and/or negligently, with the specific aim of benefiting financially from the biometric data without regard for the legal requirement to obtain consent.

160.    As a direct and proximate result of the actions of Defendant Funeral Homes and Legacy Touch, Plaintiffs suffered significant emotional distress and invasion of privacy due to the unauthorized commercial exploitation of their deceased relatives' biometric data.

**COUNT IV**
**Violation of BIPA Section 15(d) - Disclosure of Biometric Identifiers and Information Without Obtaining Consent, 740 ILCS 14/15(d).**

161.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

162.    Section 15(d) of the Illinois Biometric Information Privacy Act (BIPA) provides, in relevant part, that no private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure. 740 ILCS 14/15(d).

163.    Defendants violated section 15(d) by disclosing, redisclosing, or otherwise disseminating biometric identifiers or biometric information without obtaining the requisite consent from the subject or the subject's legally authorized representative.

164.    Defendant Funeral Homes disclosed, redisclosed, or otherwise disseminated the biometric identifier or biometric information when it sent the data to Legacy Touch's cloud-based database.

165.    Furthermore, Legacy Touch disclosed, redisclosed, or otherwise disseminated the biometric identifier or biometric information by sending targeted marketing and sales materials to Plaintiffs and putative class members.

166.    Upon information and belief, Defendant Legacy Touch disclosed, redisclosed, or otherwise disseminated the biometric identifier or biometric information by sending targeted marketing and sales materials to other family and friends of the deceased.

167.    These actions were undertaken without obtaining the necessary consent from the subject's legally authorized representative, in direct violation of BIPA Section 14/15(d)(1), as evidenced by their own documents and standard practices.

168.    The disclosed, redisclosed, or otherwise disseminated biometric identifiers or information do not fulfill any authorized financial transaction. The solicitation of sales through targeted advertising and marketing materials sent to Plaintiffs and similarly situated individuals were initiated by Legacy Touch and not requested or authorized by the families. These marketing efforts were unilateral actions taken by Defendants to generate profit and did not correspond to any financial transactions authorized by the Plaintiffs or potential Class members.

169.    Defendants' disclosure, rediscosure, or other dissemination of the biometric data was not required by State or federal law or municipal ordinance, was not pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction, as required under section 740 ILCS 14/15(d).

170.    These failures were committed with full knowledge of the statutory requirements, demonstrating intentional disregard for obtaining proper consent and informing the affected parties. Defendant Funeral Homes' and Legacy Touch's conduct in violating BIPA's provisions were knowing and willful, reckless, or alternatively negligent.

171.    As a result of the actions of Defendant Funeral Homes in disclosing the biometric identifier of Plaintiffs' deceased relatives without the necessary consent or legal requirement,

Plaintiffs' rights under BIPA were violated, causing them significant emotional distress and invasion of privacy.

## COUNT V
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 Ill. Comp. Stat. Ann. 505/1 *et seq.***

172.   Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

173.   Section 815 ILCS 505/22 of the Consumer Fraud Act prohibits unfair or deceptive practices, and specifically provides as follows:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

174.   Plaintiffs are Consumers and Persons as defined by the Consumer Fraud Act.

175.   Legacy Touch and Defendants Funeral Homes misrepresented and omitted the material fact they would collect deceased's' fingerprints for commercial purposes with the intent that Plaintiffs would rely on such misrepresentation/omission.

176.   Legacy Touch and its partner funeral homes engage in deceptive and unfair practices by capturing fingerprints of the deceased without prior consent and then seeking retroactive permission. This is evidenced by the documentation provided by Legacy Touch, which suggests capturing prints upon removal and then informing the family later.

177.   Specifically, it was unfair and/or deceptive for Defendants to misrepresent facts surrounding the collection, use, or storage of biometric data.

42

178.    Legacy Touch intends for families to rely on the deception by presenting the nonconsensual fingerprint capture as a standard and acceptable practice and asking for permission after the fact. This intent is evidenced by their policy documents, which encourage funeral homes to capture prints preemptively and inform families afterward, knowing that this might cause emotional distress but framing it as beneficial to the families.

179.    Defendants' practices offend public policy, have a direct consumer nexus, affect consumers as a whole, and violate the basic possessory rights of consumers. These practices directly implicate consumer protection concerns because the conduct impacts and threatens consumers' right to have their loved one's remains handled in a professional and dignified manner as required by Illinois law and causes significant emotional distress and financial harm to consumers by subverting the legal protections afforded to customers of funeral homes and crematories.

180.    Defendants' practices are immoral, unethical, oppressive, and unscrupulous and demonstrate an unlawful practice of maximizing profits by deceiving consumers, ignoring consumers' legal rights, and profiting from the violation of laws and regulations.

181.    Defendants' conduct further implicates consumer protection concerns generally because consumers reasonably expect that a deceased's remains will be treated with dignity and respect, and not be exploited commercially by funeral home and a jewelry company.

182.    Further, consumers reasonably expect funeral providers to communicate with them truthfully and accurately regarding their goods and services. Consumers also reasonably expect companies to honor and respect laws designed to protect consumers, as well as professional regulatory guidelines.

183.    But for Defendants' conduct, Plaintiffs and putative Class members would have the opportunity to refuse the capturing, collection, dissemination, storage, and misuse of their loved one's biometric data, and they would not be now bombarded with incessant marketing materials from Legacy Touch. As a result, Plaintiffs have experienced annoyance, and loss of time spent accessing, reviewing, and discarding such mail.

184.    The receipt of unsolicited commercial emails results in costs to Plaintiffs and putative class members in the form of data storage space consumption, annoyance, and loss of time spent accessing, reviewing, and discarding such mail.

185.    The deceptive practices of Legacy Touch and its partner funeral homes occur in the course of conduct involving trade or commerce, as they are directly tied to the business of providing funeral services and selling biometric memorial products.

186.    Legacy Touch's business model revolves around the sale of personalized memorial items. The capture of fingerprints without consent directly facilitates their commercial enterprise, making this deception integral to their business operations.

187.    Families suffer actual damage due to the unauthorized capture and subsequent use of a deceased's biometric data.

188.    Families experience significant emotional distress upon discovering that their loved ones' fingerprints were taken without consent and used for marketing purposes, often receiving unsolicited emails multiple times a week and continuing for years after the initial collection.

189.    The unauthorized capture and use of biometric data represent a clear violation of privacy, causing harm to the Plaintiffs' sense of trust and security.

190.    The deception by Legacy Touch proximately caused the damages sought by the Plaintiffs, as the families would not have suffered emotional distress or privacy violations had they been properly informed and given the opportunity to consent or decline.

191.    The emotional distress and privacy invasions are directly linked to the deceptive practice of capturing fingerprints without prior consent and the subsequent marketing of memorial products using those prints.

192.    Plaintiffs and Class Members have suffered injuries due to Defendants' violations of the ICFA and similar consumer protection laws in other states. These laws provide a basis for redress to Plaintiffs and Class Members for Defendants' deceptive, unfair, and unconscionable acts, practices, and conduct.[8]

### COUNT VI
### Invasion of Privacy

193.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

---

[8] Other states with similar consumer protection laws under the facts of this case include but are not limited to: Arkansas (Ark. Code § 4-88-101, *et seq.*); California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Colorado (Colo. Rev. Stat. § 6-1-101, *et seq.*); Connecticut (Conn. Gen. Stat. § 42-110, *et seq.*); Delaware (Del. Code tit. 6, § 2511, *et seq.*); District of Columbia (D.C. Code § 28-3901, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Hawaii (Haw. Rev. Stat. § 480-1, *et seq.*); Idaho (Idaho Code § 48-601, *et seq.*); Illinois (815 ICLS § 505/1, *et seq.*); Maine (Me. Rev. Stat. tit. 5 § 205-A, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); Montana (Mo. Code. § 30-14-101, *et seq.*); Nebraska (Neb. Rev. Stat. § 59 1601, *et seq.*); Nevada (Nev. Rev. Stat. § 598.0915, *et seq.*); New Hampshire (N.H. Rev. Stat. § 358-A:1, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New Mexico (N.M. Stat. § 57-12-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349, *et seq.*); North Dakota (N.D. Cent. Code § 51-15-01, *et seq.*); Oklahoma (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon (Or. Rev. Stat. § 646.605, *et seq.*); Rhode Island (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Dakota (S.D. Code Laws § 37-24-1, *et seq.*); Texas (Tex. Bus. & Com. Code § 17.41, *et seq.*); Virginia (VA Code § 59.1-196, *et seq.*); Vermont (Vt. Stat. tit. 9, § 2451, *et seq.*); Washington (Wash. Rev. Code § 19.86.010, *et seq.*); West Virginia (W. Va. Code § 46A-6- 101, *et seq.*); and Wisconsin (Wis. Stat. § 100.18, *et seq.*).

194.    The biometric data of Plaintiffs' deceased relatives are inherently private matters.

195.    The fact that Plaintiffs' relatives are deceased, and that Plaintiffs were in mourning are inherently private matters.

196.    Defendants intentionally and unlawfully intruded upon Plaintiffs' seclusion by capturing, collecting, storing, and using Plaintiffs' deceased relatives' fingerprints without first informing or obtaining Plaintiffs' consent or the legally required written release.

197.    Defendants' actions in capturing, collecting, storing, and using the biometric identifiers of the deceased without consent and for commercial gain, including targeted marketing of memorial products, is highly offensive or objectionable to a reasonable person and constitutes a gross invasion of privacy.

198.    As a direct and proximate result of Defendants' actions, Plaintiffs suffered significant emotional distress, including but not limited to, mental anguish and emotional suffering. Plaintiffs continue to experience emotional distress due to the ongoing unauthorized use of their deceased relatives' biometric information for commercial purposes, such as receiving unsolicited marketing materials from Legacy Touch.

199.    Plaintiffs allege that Defendants' conduct was intentional, reckless, and in blatant disregard of Plaintiffs' privacy rights. Defendants captured, collected, stored, and used the biometric identifiers of the deceased for commercial purposes without informing or obtaining consent from Plaintiffs, and without providing any means for Plaintiffs to prevent or control such actions.

**COUNT VII**
**Tortious Interference with the Right to Possess a Decedent's Remains**

200.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

201.    Plaintiffs, as the next of kin and legally authorized individual, possesses the legal right to the possession of their deceased relatives' remains to make an appropriate disposition thereof, whether by burial or otherwise.

202.    At all relevant times, Defendants had a duty not to interfere with Plaintiffs' right of possession of their relatives' body.

203.    Notwithstanding this duty, Defendants, by and through their employees, agents and/or apparent agents, violated this duty through the willful, wanton, reckless, or negligent manipulation of their deceased relatives' remains to capture fingerprints and exploit them for financial gain.

204.    Defendant Funeral Homes intentionally, recklessly, or negligently interfered with Plaintiffs' right to the possession and preservation of the body of their deceased relatives by capturing and using their fingerprints without Plaintiffs' knowledge or consent.

205.    The interference by Defendant Funeral Homes was tortious in itself, as it involved manipulation of their deceased relatives' remains and unauthorized use of biometric data, which constitutes a breach of the duty to handle the deceased's remains with respect and dignity. Such conduct can be deemed as undue influence and intrusion upon the sanctity of the decedent's remains.

206.    It is reasonably certain that Plaintiffs would have been able to exercise their right to possession and make appropriate decisions regarding their relatives' remains but for the interference by Defendants, by and through their employees, agents and/or apparent agents.

207.    As a direct and proximate result of Defendants misconduct, Plaintiffs suffered significant mental suffering, including emotional distress and anguish, due to the unauthorized handling and use of their relatives' biometric data.

## COUNT VIII
## Civil Conspiracy

208.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

209.    Defendant Funeral Homes and Legacy Touch combined and agreed to work together to accomplish the capture, use, and commercial exploitation of the fingerprints of Plaintiffs' deceased relatives without obtaining their knowledge or consent.

210.    The purpose of the agreement between Defendant Funeral Homes and Legacy Touch was to unlawfully capture and use the fingerprints for commercial gain by selling products featuring the deceased's fingerprints and to share in the profits from such sales.

211.    Defendant Funeral Homes and Legacy Touch furthered their agreement by engaging in concerted actions, including:

    a.  Defendant Funeral Homes capturing the fingerprints of Plaintiffs' deceased relatives using tools provided by Legacy Touch;

    b.  Legacy Touch creating targeted advertising and sales materials, which were sent to Plaintiffs to sell them jewelry and/or keepsakes that would feature their deceased relatives' fingerprints; and

    c.  Defendant Funeral Homes receiving a commission for each piece of jewelry sold, thus profiting from the unauthorized use of the biometric data.

212.    In furtherance of the conspiracy, one or more of the parties committed tortious acts, including but not limited to:

    a.  Unauthorized intrusion upon seclusion by capturing and using the fingerprints without consent;

    b.  Violation of the Illinois Right of Publicity Act by using the fingerprints for commercial purposes without consent;

    c.  Breach of fiduciary duty by failing to act in good faith and with due regard to Plaintiffs' interests;

d.   Tortious interference with the right to possess a decedent's remains by capturing and using the fingerprints without authorization;

e.   Trespass by invading Plaintiffs' exclusive right to control the disposition of their relatives' remains.

213.   As a direct and proximate result of the conspiracy and the tortious acts committed in furtherance thereof, Plaintiffs suffered significant emotional distress, invasion of privacy, and financial harm.

## COUNT IX
## Negligent Misrepresentation

214.   Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

215.   Defendant Funeral Homes and Legacy Touch, in the course of their business, provided information to Plaintiffs and the Class members regarding the handling and processing of the deceased individuals' remains, including assurances that all services would be conducted in compliance with applicable laws, ethical standards, and utmost dignity and respect.

216.   Defendants made express or implicit representations that they would not collect, capture, store, or use the biometric identifiers or information, specifically fingerprints, of the deceased without obtaining the prior written consent of the legally authorized representatives.

217.   Defendants had a duty to exercise reasonable care in providing accurate information about their practices and compliance with the law.

218.   Defendants breached this duty by negligently making false representations and omitting material facts about the collection, storage, and use of biometric identifiers or information without obtaining the required consent.

219.   Plaintiffs and the Class members justifiably relied on the representations made by Defendants in making decisions regarding the handling of the deceased's remains.

220.    As a direct and proximate result of Defendants' negligent misrepresentation, Plaintiffs and the Class members have suffered damages, including emotional distress, loss of trust, and other economic and non-economic losses.

221.    Plaintiffs and the Class members are entitled to recover damages for the losses caused by Defendants' negligent misrepresentation, including compensatory damages and any other relief deemed appropriate by the Court.

**COUNT X**
**Intentional Misrepresentation**

222.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully set forth herein.

223.    Defendant Funeral Homes and Legacy Touch, Inc., in the course of their business, provided information to Plaintiffs and the Class members regarding the handling and processing of the deceased individuals' remains, including assurances that all services would be conducted in compliance with applicable laws, ethical standards, and utmost dignity and respect.

224.    Defendants knowingly made false representations that they would not collect, capture, store, or use the biometric identifiers or information, specifically fingerprints, of the deceased without obtaining the prior written consent of the legally authorized representatives.

225.    Defendants intentionally omitted material facts about their actual practices, including the unauthorized collection, storage, and use of biometric identifiers or information.

226.    Defendants made these false representations and omissions with the intent to deceive Plaintiffs and the Class members and induce their reliance on these misrepresentations.

227.    Plaintiffs and the Class members justifiably relied on the intentional misrepresentations and omissions made by Defendants in making decisions regarding the handling of the deceased's remains.

228.   As a direct and proximate result of Defendants' intentional misrepresentation, Plaintiffs and the Class members have suffered damages, including emotional distress, loss of trust, and other economic and non-economic losses.

229.   Plaintiffs and the Class members are entitled to recover damages for the losses caused by Defendants' intentional misrepresentation, including compensatory and punitive damages, as well as any other relief deemed appropriate by the Court.

## VI.   PRAYER FOR RELIEF

230.   WHEREFORE, Plaintiffs, on behalf of themselves and the Class members, respectfully requests that this Court enter judgment in their favor and against Defendant Funeral Homes and Legacy Touch, Inc., and grant the following relief:

a. **Certification of the Class**: Certify this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, designate Plaintiffs as the Class representatives, and appoint Plaintiffs' counsel as Class counsel.

b. **Declaratory Relief**: Declare that Defendants' conduct as described herein violates the Illinois Biometric Information Privacy Act (BIPA), 740 ILCS 14/1 *et seq.*; the Illinois Consumer Fraud and Deceptive Business Practices Act (ILCFA), 815 ILCS 505/1 *et seq.*; and relevant common law.

c. **Injunctive Relief**: Issue an injunction requiring Defendants to:

  i. Cease the unlawful collection, capture, storage, use, and disclosure of biometric identifiers or information without prior informed written consent.

  ii. Comply with all requirements of BIPA and other applicable laws regarding the collection, storage, use, and destruction of biometric identifiers or information.

  iii. Develop and publicly disclose a written policy establishing a retention schedule and guidelines for the permanent destruction of biometric identifiers or information.

  iv. Provide written notice to all affected individuals regarding the collection, storage, and use of their biometric identifiers or information and obtain their informed written consent.

d.  **Compensatory Damages**: Award Plaintiffs and Class members compensatory
    damages, including but not limited economic losses.

e.  **Statutory Damages**: Award Plaintiffs and Class members statutory damages as
    provided under BIPA and any other applicable laws, including $1,000 for each
    negligent violation and $5,000 for each intentional or reckless violation.

f.  **Punitive Damages**: Award Plaintiffs and Class members punitive damages to
    punish Defendants for their willful, wanton, and reckless conduct and to deter
    future violations.

g.  **Attorneys' Fees and Costs**: Award Plaintiffs and Class members their reasonable
    attorneys' fees, costs, and expenses incurred in this action.

h.  **Pre- and Post-Judgment Interest**: Award Plaintiffs and Class members pre- and
    post-judgment interest at the highest rate allowed by law.

i.  **Other Relief**: Grant any other relief that the Court deems just and proper.

Plaintiffs demand a trial by jury for all issues so triable.

Dated:  August 14, 2024

*s/ Gary Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Tel: (866) 252-0878
gklinger@milberg.com

Patrick S. Montoya *
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
201 Sevilla Avenue, Suite 200
Coral Gables, FL 33134
Florida Bar No. 524441
pmontoya@milberg.com
Tel.: (305) 458-1797

Charles J. LaDuca *
Brendan S. Thompson *
**Cuneo Gilbert & LaDuca, LLP**
4725 Wisconsin Ave, N.W., Suite 200
Washington DC 20016
Tel.: (202) 789-3960
charles@cuneolaw.com

brendant@cuneolaw.com

James J. Pizzirusso *
Ian Engdahl *
**Hausfeld LLP**
888 16th Street, N.W., Suite 300
Washington, DC 20006
Tel.: (202) 540-7154
jpizzirusso@hausfeld.com
iengdahl@hausfeld.com

Steven M. Nathan *
**Hausfeld LLP**
33 Whitehall Street, 14th Floor
New York, NY, 10004
Tel.: (646) 357-1100
snathan@hausfeld.com

Charles Barrett *
**Neal & Harwell, PLC**
1201 Demonbreun St.
Suite 1000
Nashville, TN 37203
Tel.: (615) 244-1713
cbarrett@nealharwell.com

*Pro Hac Vice Forthcoming*

*Counsel for Plaintiffs and the Proposed Class*