1

           IN THE UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF ILLINOIS

3

LAUREN WEINER, et al,     )

4                    )

         Plaintiffs,    )

5                    )

v.                 )  No. 24-cv-01827

6                    )  East St. Louis, Illinois

LEGACY TOUCH, et al,     )

7                    )  MOTION HEARING

         Defendants.    )

8

9

10               TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE DAVID W. DUGAN

11                JANUARY 28, 2025

12 APPEARANCES:

13 FOR THE PLAINTIFFS:  MR. BRENDAN THOMPSON
                   MR. IAN J. ENGDAHL

14                 MR. JAMES PIZZIRUSSO
                   MR. STEVEN M. NATHAN

15 FOR THE DEFENDANT LEGACY TOUCH:
                 MS. TARA DANIELLE KENNEDY

16                 MR. WILLIAM FRANCIS NORTHRIP

FOR THE DEFENDANT GLUECKERT FUNERAL HOME, LTD:

17                 MR. JOHN HAYES

FOR THE DEFENDANT KRISTAN FUNERAL HOME, PC:

18                 MR. HARRY N. ARGER

19

20              Erikia Schuster, RPR
                IL CSR #084-00

              750 Missouri Avenue

21          East St. Louis, IL  62201
              618-482-9226

22        Erikia_Schuster@ilsd.uscourts.gov

23     *Proceedings recorded by mechanical stenography;*
    *transcript produced by computer-aided transcription.*

24

25

```
 1              THE COURT:  We are now on the record in case number

 2    24-CV-1827, Lauren Wiener, et al, versus Legacy Touch, et al,

 3    for a motion hearing.  Will the parties please identify

 4    themselves for the record beginning with Plaintiff.

 5              MR. ENGDAHL:  This is Ian Engdahl from Hausfeld LLP

 6    for the Plaintiffs.

 7              MR. THOMPSON:  Good morning, Your Honor.  Brendon

 8    Thompson from Cuneo Gilbert & LaDuca.

 9              MS. KENNEDY:  Good morning, Your Honor.  Tara Kennedy

10    on behalf of Defendant Legacy Touch, and my colleague William

11    Northrip is here as well, just not on camera.

12              MR. HAYES:  Good morning, Your Honor.  John Hayes for

13    Defendant Glueckert Funeral Home.

14              MR. ARGER:  Good morning.  I'm Harry Arger for

15    Kristan Funeral Home.

16              THE COURT:  Good morning, everyone.

17              We're here on motions to dismiss today.  Who is going

18    to argue primarily?  Did we discuss who is going to go first?

19              MS. KENNEDY:  Your Honor, I'm intending to argue for

20    Legacy Touch.

21              MR. ENGDAHL:  And I'll will argue for the Plaintiffs,

22    Your Honor.

23              THE COURT:  Who would like to go first between Mr.

24    Engdahl and Ms. Kennedy?

25              MS. KENNEDY:  It is Legacy Touch's motion to dismiss
```

1    so I'd be happy to go first.

2          THE COURT:  Very good.  Thanks.

3          MS. KENNEDY:  As I said, Tara Kennedy on behalf of

4    Defendant Legacy Touch.  And as the Court is aware, we're here

5    today on Legacy Touch's Motion to Dismiss Plaintiffs'

6    complaint in its entirety.  I am planning to focus the

7    argument primarily on Plaintiff's BIPA claims because those

8    are issues of first impression and they also require a little

9    unpacking in the way that Plaintiffs have conflated various

10   representative roles for bringing those claims.  I am planning

11   to briefly address the Consumer Fraud Act and common law

12   claims towards the end of my argument time permitting.

13         So jumping right into the BIPA claims.  Here the

14   Plaintiffs' claims are encountering two serious hurdles that

15   they cannot overcome.  The first is that rights under BIPA

16   belong to the subject of the biometric identifiers.  So here

17   that would be the decendents, not the named Plaintiffs.

18         The second hurdle is that over a hundred years of

19   common law has made clear that dead bodies, decedents, have no

20   legal existence.  They cannot suffer a legal injury and this

21   would include suffering a BIPA violation.  So no claim can

22   accrue on behalf of the decedents after they are already dead

23   under the common law.

24         THE COURT:  Let me interrupt you, Ms. Kennedy.  Is

25   there any support in the law anywhere for a right of privacy

1    on behalf of a decedent, not that might unnerve to his

2    representatives or her representatives, but actually is a

3    right that accrues on behalf of a decedent anywhere in the

4    law?

5        MS. KENNEDY:  Not that I am aware of, Your Honor.  I

6    think the law is very clear that once someone is dead they can

7    no longer accrue a privacy action or claim.  You know, and

8    this is what I think we have attempted to make clear in our

9    reply, which is that you can't accrue a privacy claim if you

10   are already dead.  Illinois does have certain acts that

11   abrogate that common law and allow for certain types of claims

12   to be brought after death, but none of those claims are claims

13   that accrue at the time after death.  So the Wrongful Death

14   Act, the claim accrues from acts that occur at the time of

15   death and caused the death, and the Survival Act applies to

16   claims that accrue before death and then continue on and can

17   be pursued after.

18       I think the Common Law is extremely clear that the

19   dead have no legal rights, no legal existence and that would

20   include privacy rights, so those cannot accrue at the time

21   after death.  And I think some of the cases that we've cited

22   make that clear as well.  For example, there's the *Ravellette*

23   case where a family tried to allege a claim on behalf of a

24   decedent for collection of their blood after they were dead.

25   The Court rejected that claim on the basis that the decedent

1    could not suffer any privacy harm because they were already

2    dead.  The same is true of the *Maritote* case involving Al

3    Capone.  The estate there tried to bring a claim on behalf of

4    Al Capone for violations that occurred after his death and the

5    Court rejected those claims as well.

6         So this is the reason why the purported claims on

7    behalf of the estates fail here.  Those claims have to be a

8    claim that the estate is pursuing on behalf of the decedent.

9    They cannot accrue after the person is already deceased.  And

10   the claims here don't fall within the Wrongful Death Act or

11   the Survival Act.

12        So Plaintiffs seem to be arguing that BIPA is

13   creating a new right or ability to bring a posthumous claim

14   like this, but Illinois law is clear again that if the

15   legislature wants to abrogate the Common Law by creating a new

16   right like that, that it would have to do so explicitly.

17   There's nothing in BIPA that explicitly abrogates the law that

18   the dead have no legal existence and cannot suffer legal

19   injury.  It doesn't say anything about claims on behalf of

20   estates or claims accruing for post death activities and the

21   section that provides a private cause of action speaks about

22   aggrieved persons.  Nether the estate nor the decedents are

23   persons any longer once they have passed away.

24        So simply put, the Common Law is that the dead cannot

25   accrue new claims for privacy violations if they are already

1    dead and BIPA does not abrogate that law explicitly so

2    Plaintiffs cannot stay the claim on behalf of the estate here.

3            So the Plaintiffs perhaps recognizing this then try

4    to argue that they have independent right in their capacity as

5    legally authorized representatives to bring a personal claim

6    under BIPA on their own behalf.  There's a couple of issues

7    with this claim as well.

8            First, it is dubious whether the Plaintiffs could

9    even be acting as legally authorized representatives outside

10   of the scope of the estate once someone has passed away.

11   Legally authorized representatives authorized to act on behalf

12   of a living person.  Because the dead don't have legal

13   existence, you cannot be a legally authorized representative

14   outside of the estate on their behalf.

15           But even assuming that the Plaintiffs could be acting

16   as some type of representative here, they still wouldn't have

17   their own claims under BIPA.  The rights under BIPA are to the

18   subject of the biometric information.  So the Plaintiffs here

19   are confusing the idea of the rights that are provided by that

20   act with the idea of authority to take certain steps on behalf

21   of a person.  You know, so this is just sort of the core

22   principle that you can delegate the power to act on your

23   behalf.  You can delegate the power to pursue rights or

24   claims, but you can't delegate the right itself to somebody

25   else.  So the legally authorized representatives are just

1    that.  They're representatives.  They have authority to act

2    for somebody else to represent them, but they don't own the

3    claim under BIPA.

4          So here even if Plaintiffs are legally authorized

5    representatives, there's no independent right to provide

6    consent or to receive notices.  They are simply authorized to

7    take those acts on behalf of the subject of the biometric

8    information.

9          This is supported by the text of the act and by cases

10   interpreting it.  So within the statute itself, legally

11   authorized representatives, that phrase appears only in

12   section 15 and that's the section that sets out the

13   substantive rights provided under BIPA, but also how a

14   collecting entity can comply with its obligations.  One way to

15   comply is by getting consent from a legally authorized

16   representative, but again, the representative just has the

17   authority to provide that consent.  Section 20 is the section

18   that actually sets forth the affirmative right to bring a

19   private claim and that section makes no mention of legally

20   authorized representatives at all.  That section speaks only

21   of the person aggrieved, and I think it is clear under the

22   frame work of the act the person aggrieved is the subject of

23   the biometric information who has their information collected

24   or otherwise utilized in some way that violates the act.

25          So that statutory framework is also supported by the

1    case law interpreting BIPA.  Primarily we've pointed to

2    Rosenbach, which was a mother bringing a claim but on behalf

3    of her minor child.  The Court went out of its way to make

4    clear that the mother was not pursuing a claim on her own

5    behalf.  But also in discussing what aggrievement means, the

6    court noted that the act is meant to codify the rights of

7    individuals to possess and control their biometric

8    information.  So it is not the right of a representative to

9    provide consent, it is that person's control over their own

10    information.

11         That framework is also supported by some of the cases

12    that Plaintiffs have cited involving union representatives.

13    The case law is held that a union representative may be a

14    legally authorized representative under the act so they have

15    authority to provide consent or receive notices, but even in

16    those cases the unions are not the ones with the BIPA claim.

17    Those claims belong to the employees and the employees have to

18    pursue them through collective bargaining or whatever

19    regulations are set forth for them.

20         It is also supported by the fact that in the nearly

21    15 plus years that BIPA has been enacted we at least are not

22    aware of any case where a legally authorized representative

23    has pursued a claim for themselves as opposed to on behalf of

24    the subject of the biometric information.  So what Plaintiffs

25    are asking for here is a massive expansion of the law and

1    simply not supported by the text of the act.

2         I think it is also supported by some sort of

3    common-sense applications.  Plaintiffs' position would have no

4    logical stopping point.  We mentioned in our brief that photos

5    of celebrities or even just normal people are out there in the

6    public.  If somebody ran a scan of facial geometry on those

7    photos, under Plaintiffs' theory their next of kin or a

8    relative could have a BIPA claim in their own right in

9    perpetuity.  Or the same idea perhaps if there are two parents

10    and one provided consent but the other would have liked to

11    have been asked for their consent and would have withheld it,

12    under Plaintiffs' theory that second parent could potentially

13    have their own independent BIPA claim and that's just not the

14    type of -- that's not the rights that the act is meant to

15    protect.

16         So fundamentally there's nothing in BIPA's text or

17    the case law that supports the theory that a representative

18    has the right to bring a claim in their own right for the

19    collection of somebody else's biometric information.  And this

20    is especially so where the subject of the biometric

21    information was already dead and so could not have been

22    aggrieved by that collection in the first instance.

23         And we do have some other arguments for why each of

24    Plaintiffs' BIPA claims fail in our briefing.  We would like

25    to stand on those as well, but at this point I would like to

1    move to Plaintiffs' other claims.

2           So very briefly, invasion of privacy, the

3    Plaintiffs are alleging an intrusion upon their seclusion

4    theory.  That claim I think there again conflating whose

5    privacy interests are at issue.  They try to premise it on

6    collection of the decedent's biometric information, but, again

7    that's not an issue over which the Plaintiffs have a privacy

8    interest that belongs to the decedents who are dead and can no

9    longer pursue that claim.

10          To the extent they point to the fact that the

11   relatives are deceased and they were in morning, that

12   information is public through obituaries and other means so it

13   is just not sufficiently private to support the claim here.

14          Plaintiffs also failed to allege one of the other

15   elements which is highly offensive intrusion into physical

16   boundaries or affairs.  Here they allege that the marketing

17   emails were an intrusion, but there is simply no support in

18   case law that receiving marketing e-mails is sufficient to

19   support this type of claim.

20          Last, the Plaintiffs failed to allege any anguish or

21   suffering from the alleged intrusion.  Then Illinois case law

22   is clear that just general allegations of emotional distress

23   are not sufficient to support this claim and that's all that

24   we have in the complaint here.

25          Turning briefly to Plaintiff's Consumer Fraud Act

1  claims, so this claim fails for one very straightforward and

2  simple reason.  The Plaintiffs have not alleged the requisite

3  economic harms here.  That applies regardless of what theory

4  they are attempting to bring the claim under.  Illinois law is

5  abundantly clear that damages for intangible harms are not

6  compensable under the Consumer Fraud Act unless they are

7  paired with actual economic damage.

8         There is no actual economic damage alleged here.  At

9  most the Plaintiffs allege emotion distress, annoyance, loss

10  of time dealing with e-mails and storage space, but these

11  types of damages have all been rejected in the case law as an

12  independent basis for Consumer Fraud Act claims and the claim

13  must be dismissed on that basis alone.

14         The Consumer Fraud Act claim also overlaps with the

15  misrepresentation claims in most ways.  So Plaintiffs have

16  also failed to allege the requisite damages that they need for

17  those claims.  The intentional misrepresentation claim

18  similarly requires some economic loss and the negligent claim

19  requires more than simply alleging emotional damages.

20         Those three claims also fail for the reason that the

21  Plaintiffs haven't alleged any unfair or deceptive practice by

22  Legacy Touch, and similarly no false statement or omission.

23  In fact, they explicitly allege that they were never asked to

24  provide consent at all and that they weren't given any

25  information about the collection of fingerprints so they're

1  attempting to premise this claim on conduct that they

2  expressly allege they were not subjected to.  And for the same

3  reason any argument that there was an intent to induce the

4  Plaintiffs to do anything or that they relied on any omission

5  or misrepresentation likewise fails.  Simply put, if Legacy

6  Touch never contacted them or asked for consent after the fact

7  they can't stay the claim that asking for consent after the

8  fact was somehow deceptive.

9         THE COURT:  Let me ask you this question,

10  Ms. Kennedy.  Regarding the misrepresentation, one thing that

11  occurred to me to raise the question of whether there's an

12  expectation that certain events are to take place when you

13  drop off a loved one at the funeral home for cremation or

14  preparation for a service, is there an expectation that that

15  individual is being dropped off for that sole purpose and not

16  to market his or her, or its in this case when it is deceased,

17  its bodies, not biometric matters, but to advertise through

18  other means availability to memorialize.  Is there an

19  expectation that when you do drop off your loved one that

20  they're not going to be used for commercial purposes?  Would

21  that be a misrepresentation as to the family members who are

22  turning that body over for preparation or cremation?  Any

23  thoughts on that?

24         MS. KENNEDY:  I think there -- I don't -- the

25  families I don't think are aware and have to approve of every

1    act that takes place at the funeral home.  I'm sure there are

2    many processes that are not explicitly listed and discussed

3    with the family that are a part of the process there.  But I

4    think even more importantly, a subjective idea that this might

5    not happen I don't think can state the basis at least for

6    consumer fraud -- you were asking about misrepresentation.

7    Certainly not for the intentional misrepresentation.  That is

8    subject to a heightened pleading standard, and I don't think

9    Plaintiffs have even come close to alleging enough to support

10   that.

11          And for negligent misrepresentation, I still think

12   they would fail there on the intent to induce and reliance.

13   Plaintiffs haven't alleged that if they had received some

14   other information or disclosures that they would have acted

15   any differently or that they relied on the omission so I think

16   they've just failed to state those factors, even if we assume

17   that perhaps they had that expectation going in.

18          THE COURT:  Okay.  Thank you.

19          MS. KENNEDY:  And I think it also wouldn't overcome

20   the fact that they haven't adequately alleged the level of

21   damages necessary for any of those claims.

22          One last piece about negligent representation as

23   well, and I think this one is really important for that claim,

24   is that Legacy Touch would be required to have a duty to

25   communicate accurate information, but the Illinois Supreme

1    Court has interpreted that duty as arising only to situations

2    where the accurate information is needed to avoid physical

3    injury or property damage or if the Defendant is in the

4    business of supplying information for the guidance of others,

5    but in their business transactions.

6          So here Plaintiffs, you know, try to allege that

7    Legacy Touch or the funeral homes had a duty to supply

8    information, but they simply can't and do not allege that

9    Legacy Touch had a duty to supply information to guide the

10   Plaintiffs in business transactions.  So that claim fails

11   under that independent basis as well.

12         And last, Plaintiffs did try to raise a claim for

13   tortious interference with the right to possess a decedent's

14   remains.  Again, this one fails because the Plaintiffs haven't

15   alleged the necessary elements to support the claim.  The

16   Common Law does recognize a limited right to possess a

17   decedent's body, but this is to make appropriate disposition

18   of the body.  The law is very clear on what is potentially

19   covered by this tort, its denial of proper burial or cremation

20   or some mutilation of the body.  So the examples are

21   accidentally cremating a body where the family intended to

22   bury it, embalming a body and therefore preventing an autopsy

23   or shaving hair so that an open casket can't be held.  The

24   allegation that, you know, a scan of a fingerprint was taken,

25   which is a superficial and noninvasive?  It simply doesn't

1    rise to the level of denying proper burial or in any way

2    mutilating or subjecting the body to damage, so Plaintiffs

3    simply cannot stay the claim there.

4            So for each of these reasons, Plaintiffs' claims

5    fail.  We also would stand on the additional argument set

6    forth in our briefing.  We ask the Court to dismiss the

7    complaint in its entirely.  If I have any remaining time, and

8    I'm not sure if I do, I'd like to reserve for brief rebuttal.

9            THE COURT:  Mr. Engdahl?

10            MR. ENGDAHL:  Good morning, Your Honor.  So this case

11   presents a question of whether the important protections

12   afforded by the Illinois Biometric Information Privacy Act

13   expire with an Illinois resident's last breath, and we

14   respectfully submit they do not.  There is nothing in the text

15   or structure that they've been able to identify today or in

16   their briefing that limits the application of the statute to

17   biometric information of living individuals.  As the facts of

18   this case itself show, deceased individuals like living

19   individuals have biometric information that companies such as

20   Legacy Touch seek to exploit for commercial purposes.  And

21   unless there are statutes like BIPA to protect those

22   interests, that exploitive conduct will be taken.

23            THE COURT:  The statute under 15D uses the term

24   person or customer.  Set aside a moment the issue of customer

25   because I think the decedent would not be a customer, but

1    section 15D, no private entity in possession of biometric

2    identifier or biometric information may disclose, disseminate

3    a person's or customer's biometric identifier without consent.

4    So are you suggesting that a deceased is a person?

5            MR. ENGDAHL:  I think as used within the statute

6    here, that is a fair reading of the statute.

7            THE COURT:  That a deceased individual is a person

8    for the purpose of the statute?

9            MR. ENGDAHL:  I think for the purpose of this

10   statute.  They're obviously situations where that is not the

11   case under Illinois law, but I think a fair reading of the

12   statute is this would cover deceased individuals and their

13   rights wouldn't expire as soon as they pass away.

14           And you know, this connects with the Common Law claim

15   that my friend on the other side was talking about, this

16   tortious interference with the right to possess a deceased

17   remains, and I think that Common Law claim creates a clear

18   precedent for sensitive situations like this where a

19   deceased's remains are being manipulated under the care of a

20   defendant for them to have certain duties.  So it is not

21   unprecedented for a statute like BIPA and those sorts of

22   requirements to apply to a deceased because we see that in the

23   Common Law tortious interference claim.

24           THE COURT:  If we were to use the common meaning of

25   terms, you think a deceased person would be included in that

1    definition of a person?

2          MR. ENGDAHL:  Like I said, I don't think that is a

3    claim I would make across Illinois law, obviously.  But I

4    think a fair reading of this statute, there's nothing in here

5    that indicates they intended for it to not extend to deceased

6    persons.

7          THE COURT:  All right.

8          MR. ENGDAHL:  I can move on.  You know, and related

9    to that, the text of BIPA does not limit claims only to those

10   whose biometric information was actually taken.  Instead the

11   statute says that, quote, any person aggrieved by a violation

12   of the act will have a right of action.  And as the Illinois

13   Supreme Court clarified in *Rosenbach*, aggrieved is defined

14   expansively and it means having, quote, a substantial

15   grievance, a denial of some personal or property right.

16         Now, BIPA specifically recognizes the power of

17   legally authorized representatives like the Plaintiffs here to

18   consent or not to the collection of biometric information and

19   that legal right to control the disposition of biometric

20   information is exactly what BIPA was intended to protect, and

21   it was denied here.

22         BIPA empowered the Plaintiffs as legally authorized

23   representatives to make certain decisions about the

24   disposition of biometric information, and the Defendants

25   denied them that right.  As *Rosenbach* makes clear, the denial

1   of that statutory right is what is necessary under BIPA.

2          Moreover, here Plaintiffs bring claims in both their

3   individual capacity and as the authorized representatives of

4   their children like the power to bring claims on behalf of the

5   child in *Rosenbach* that we saw, the power of legally

6   authorized representative to sue on behalf of the estate is

7   found in long-standing Common Law tradition, allowing

8   authorized representative to step into the shoes of decedents

9   or minor and bring claims on their behalf including under

10  BIPA.  And contrary to what was stated earlier --

11         THE COURT:  If I can interrupt you for a moment,

12  Ms. Kennedy spent some time on the difference between accrual

13  of claims, where they accrue prior to that last breath as time

14  of death and can a claim accrue after that point of death,

15  that is the last breath, brain dead, when that person reaches

16  that point can a claim accrue to that outside of some

17  statutory directive?  In other words, does Common Law provide

18  for that?

19         MR. ENGDAHL:  Here the Common Law clearly provides a

20  cause of action for next of kin to bring that tortious

21  interference with the right to dispose of a decedent's

22  remains.  So there is a clear precedent for exactly the

23  position that our Plaintiffs are in here.

24         THE COURT:  Does the decedent have that right or is

25  it the relatives, the representative of the estate have the

 1   right to bring a claim for improper disposition of the

 2   remains?

 3          MR. ENGDAHL:  Well, the law recognizes that the next

 4   of kin have the capacity to step in and protect those

 5   interests.

 6          THE COURT:  Whose right does that belong to, the

 7   decedent or the decedent's representative?

 8          MR. ENGDAHL:  I'm not sure the case law in Illinois

 9   has made clear who that right specifically belongs to, but I

10   think the law there, the same with BIPA, there are interests

11   on both sides, both for the person who is the next of kin to

12   the individual who under BIPA is the legally authorized

13   representative.  They have certain responsibilities, duties

14   and rights under the statute and similarly for that Common Law

15   claim, the law recognizes that the next of kin have an

16   interest in their relative's remains not being improperly

17   interfered with.

18          So I want to also note how the facts of this case

19   show the importance of BIPA's protections for the deceased.

20   The Defendants here sought to profit from the biometric

21   information of Plaintiffs' children.  Legacy Touch, as we

22   alleged, conspired with the funeral home defendants to

23   physically manipulate the remains of the deceased to extract

24   fingerprints to sell keepsakes without asking the permission

25   that was necessary under BIPA.

1          Even before discovery, public documents included in

2     the complaint made clear that Legacy Touch knew that this

3     practice, quote, has a potential risk to upset the family

4     since you took the print without asking first.  In light of

5     these facts, public policy weighs heavily in favor of

6     Plaintiffs' claims here.  Illinois law states that it is,

7     quote, a matter of public interest and concern that the

8     preparation, care and final disposition of a deceased human

9     body be attended with appropriate observance and understanding

10    having due regard and respect for the reverent care of the

11    human body and for those bereaved in the overall spiritual

12    dignity of every person.

13         THE COURT:  I can't disagree with that, but is that a

14    judge decision to do that or is that -- because it doesn't

15    fall within a clearly defined pigeonhole of a cause of action

16    or is that the legislature's obligation to follow up on that

17    and try to remedy situations where there is cause of some

18    extra pain or additional pain to the family members because

19    something unexpected is done with or to the body following

20    death.  Is that the issue?

21         MR. ENGDAHL:  We think the text of BIPA as we've

22    discussed can be fairly read to already cover this conduct.

23    The legislature was concerned with exactly what happened here

24    in terms of the commercial appropriation of biometric

25    information being put to purposes that people didn't intend

1    without the correct authorization from a legally authorized

2    representative or the individual themselves.

3            THE COURT:  All right.

4            MR. ENGDAHL:  Let me address a few points that were

5    raised by the other side.  So they said that Plaintiff here

6    never suffers an injury and the only injury that is suffered

7    is -- they say that our Plaintiffs here as individuals never

8    suffered an injury, but as we just discussed the injury that

9    they suffer is when they are denied the right to exercise the

10   power that is given to them under the statute to control the

11   biometric information of their next of kin.

12           They also talked about how BIPA should not allow --

13   should not be interpreted to allow representative to act when

14   the individual whose biometric information is at issue is not

15   legally competent to act or not a legal person.  I think that

16   is exactly the cases where it can be really essential to have

17   a legally authorized representative and that's why that

18   provision is built into BIPA.

19           We saw in *Rosenbach* the situation where it was a

20   child who couldn't have brought a case for themselves.  You

21   can also easily imagine cases where someone is mentally

22   incompetent or in a coma and things like that and you need a

23   legally authorized representative to step in and make those

24   decisions even when that person might not be legally competent

25   to bring the case on their own accord.

1        Now Defendant Legacy Touch also said this would be a

2   massive expansion with no logical stopping point of BIPA, but

3   that is simply not the case because here we are asserting

4   claims as legally authorized representatives.  That is the

5   line that we are drawing and that the statute draws.  We're

6   not saying that anyone who knows somebody who is involved in a

7   violation of BIPA can bring claims but where there's a legally

8   authorized representative or someone who has the authority on

9   behalf of the estate to bring claims, in those cases with the

10  clear limiting principle, they're in the correct position to

11  bring claims.

12       So with that, unless the Court has any further

13  questions, I can also address the other claims as well.  They

14  mentioned the Illinois Consumer Fraud Act, and here they're

15  simply ignoring the allegations in our complaint.  They keep

16  insisting that there are no allegations of pecuniary loss

17  whatsoever, but we allege, quote, cost to Plaintiffs including

18  costs from, quote, data storage space consumption.

19       Now Defendants might scoff at this and say, oh,

20  that's immaterial or de minimus, but that is a factual dispute

21  that is really not suitable for resolution at this stage and

22  they have presented no case that says there is certain quantum

23  of pecuniary loss that is needed for those ICFA claims.  And

24  in fact, the law is quite clear that as soon as you establish

25  any pecuniary loss that those other intangible harms such as

1  emotional distress, aggravation, inconvenience, that you can

2  then bring claims based on those harms which are clearly well

3  pled in the complaint.

4          And as we say in our brief, to the extent the Court

5  disagrees and believes that actual pecuniary loss wasn't pled

6  despite those allegations of actual loss, we would

7  respectfully request the Court grant Plaintiffs' leave to

8  amend the complaint to include additional allegations such as

9  benefit of the bargain damages, which Legacy Touch

10  acknowledged are allowed under the statute, and we think would

11  be applicable here.

12          On negligent intentional misrepresentation, I think

13  it is clear from the Plaintiffs' allegations, we allege a

14  civil conspiracy and what you had here, it is true that the

15  Plaintiff until they were receiving emails from Legacy Touch

16  didn't directly communicate with Legacy Touch, but Legacy

17  Touch was working with its coconspirators, the Defendants, the

18  funeral home Defendants and the internal documents we have in

19  the complaint show that they instructed or directed these

20  other Defendants, their coconspirators, to omit certain facts,

21  keep information from the Plaintiff, don't ask for their

22  permission early, just take the fingerprints and then ask for

23  permission later even though we know this is going to upset

24  the potential next of kin.

25          So we think that lays out a clear conspiracy to

1  misrepresent facts and intentionally omit material facts from

2  the Plaintiffs here.  And with that, unless the Court has any

3  other questions.

4      THE COURT:  I don't have anything of you.

5      Ms. Kennedy, I did have one question so I want to go

6  back to you for a moment.  What comes to mind is a word that

7  Mr. Engdahl used and that de minimus, and that is the copying

8  of fingerprints through some means.  Let's assume it is a

9  little more aggressive, a little more dastardly than just

10  taking fingerprints.  That is drawing blood.  It is a

11  biometric DNA, something that would be preserved I understand

12  for a period of time and certain individual who might have

13  such motivations could use that in a way that would be very

14  harmful, probably very harmful to the families' period of

15  grieving so that it gets past this issue of damages.

16      So we have a situation here which seems to be a

17  minimal effort to extract whatever biometric data they did

18  versus the scenario that I am giving you where there's a

19  drawing of blood, but there's many things that can be done,

20  some of which are dastardly potentially, some of which could

21  be used for a very reasonable purpose, but nevertheless it is

22  used.  Does that change your thinking on the BIPA claim at

23  all?

24      MS. KENNEDY:  It doesn't, Your Honor.  You know, if

25  there were some specific dastardly harm that was attempting to

1    be avoided, I don't think BIPA can be used as a catchall for

2    anything that might implicate these types of privacy

3    interests.  I think we have to look at the text of the act and

4    what it provides a claim for.  And here, that claim is for the

5    individual whose biometrics are at issue to have control over

6    it.  Really, it all comes back to the fact that once someone

7    has passed away, they no longer have a legal claim and their

8    families cannot bring a claim on their own behalf under BIPA

9    so it doesn't change my thinking on BIPA.  Whether it can

10   state another potential cause of action, you know, I think

11   we'd have to have the actual facts in front of us.

12          THE COURT:  Well, I've given you the actual facts,

13   what they do with it could be dastardly.  It may or may not

14   be, but you have this sample out there and you have the data

15   from it, DNA for example, the blood samples, replication is

16   becoming an issue these days with DNA, regenerative -- of DNA

17   samples.  So that presents a potential issue, and I think that

18   is what really BIPA goes to and that is not just the use of it

19   but potentially the misuse of some of this DNA.  And I think

20   that really what -- if I can read the legislature's mind,

21   Illinois legislature's mind, I think that's what they were

22   trying to push up against and that is not just the use but

23   potentially the misuse of it.

24          Here we have obviously just fingerprints, get apart

25   from misuse and so forth.  In my mind, it may be a matter of

1    degree of potential for harm that may pull it within or

2    without BIPA.  Do you agree with that or do you disagree with

3    that?

4              MS. KENNEDY:  Your Honor, I think if the subject of

5    the biometrics is already a decedent, someone who is dead,

6    then I don't know that the type of biometric information

7    collected matters one way or another.  Because we have to go

8    back to the Common Law, which is that that person no longer

9    has legal existence and can't suffer a legal injury so that a

10   BIPA claim can't accrue on that decedent's behalf regardless

11   of the type of biometric information or identifiers that is at

12   issue.

13             THE COURT:  Fair enough.  Did you want to add

14   anything else, Ms. Kennedy?

15             MS. KENNEDY:  If I may, Your Honor, just a couple

16   brief points.  I think Plaintiffs -- they're approaching

17   whether BIPA abrogates the Common Law a little backwards.

18   They said that there's nothing in BIPA that limits it to

19   living persons, but because the Common Law is that a dead body

20   has no legal existence and no ability to be legally injured,

21   BIPA would have to explicitly abrogate that Common Law.  It

22   doesn't need to exclude deceased persons because they're

23   already excluded under longstanding Common Law.  There's

24   nothing in the act that does that.  I just think they were

25   looking at it a little backwards there.

1           And I think the Court was exactly right, that the

2    term person in the act in the ordinary construction of that

3    word implies a living person.  I don't think that a corpse or

4    a dead body is a person any longer.  Perhaps that may be

5    insensitive.  I understand it is an emotional subject, but

6    just as a matter of interpretation of that word, I think

7    that's the obvious result so it is not a fair reading of the

8    act to say that person is meant to encompass the deceased in

9    this context.

10          Again, the act would have to explicitly say that in

11   some way.  I also think counsel said something about how it

12   can't be that rights expire under BIPA when someone is passed

13   away, but, again, that is the Common Law.  Everybody's rights

14   expire when they die.  You know, the right to vote, the right

15   to pro -- protections under the constitution, which are

16   addressed in one of the cases we've cited, those rights all

17   die when someone passes away and BIPA is no different.  There

18   is nothing in the act that would support any reading

19   otherwise.

20          And then, again, BIPA doesn't grant rights to legally

21   authorized representatives.  It grants the ability to provide

22   consent or receive notices, so authority to do those actions.

23   There's nothing in the act that says there is a right to

24   receive those.

25          And I think one other important distinction is when

1    we're looking at legally authorized representatives for a

2    minor, someone who is otherwise incapacitated and can't make

3    decisions, if you have power of attorney for someone, again,

4    these are all for living people and we can't ignore that there

5    is a significant difference between the rights and the legal

6    claims that need to be protected on behalf of the living and

7    the fact that decedents no longer have those rights and

8    claims.  So there's just a fundamental difference between

9    legally authorized representatives for the living and

10    attempting to assert that status on behalf of the deceased.

11           Just a few other things; of the tortious interference

12    claim, I think the case law is quite clear that that right

13    belongs to the next of kin.  It is not a claim that is brought

14    on behalf of the estates, so I just wanted to clarify that

15    factor.

16           And then with regards to what the legislature was

17    concerned about, it certainly was not this exact scenario.  I

18    think counsel suggested in the legislative history or in the

19    language of the preambles in the act they were very focused on

20    financial transactions and living persons being deterred from

21    engaging in those.  There are, of course, other concerns but I

22    don't think there's anything in the text that would support

23    the idea that this scenario is what the legislature was

24    concerned about.

25           And then just very briefly on the Consumer Fraud Act

```
 1    claim.  Again, the damages that Plaintiffs have alleged even

 2    if we look at the allegation that they had to expend money on

 3    storage space or sorting through unwanted marketing e-mails,

 4    those are not the type of pecuniary harm that is required.

 5    Traditionally, a Consumer Fraud Act is looking at whether

 6    there is some loss of benefit or if a consumer paid more for a

 7    product than what they actually received, and there's no

 8    possible theory under which Plaintiffs can allege that here

 9    against Legacy Touch because they haven't actually purchased

10    anything from Legacy Touch so there can't be a loss of benefit

11    of the bargain with regards to Legacy Touch.  They haven't

12    paid more for an item than what they received.  They just

13    haven't stated pecuniary loss here.

14          And the Flores vs. Aon case we cite is very clear.

15    It looked at some damages from a data breach which would be of

16    a similar nature as to those alleged here and how that they

17    were insufficient under the Consumer Fraud Act.

18          So unless Your Honor has any other questions, I

19    think --

20          THE COURT:  I don't.  Mr. Engdahl, any response to

21    Ms. Kennedy?

22          MR. ENGDAHL:  Yeah.  I mean, I think I -- one thing

23    that is worth responding to is the idea that a person's

24    personal representative on behalf of the estate there is no --

25    they have said in their briefs and they've said here today
```

1    that they can only bring claims for wrongful death and under

2    one other statute and that is simply not the case.  If an

3    estate is robbed or someone breaches a contact with an estate,

4    like there are claims and can be claims brought on behalf of

5    an estate because the personal representative steps into the

6    shoes of that person and can bring claims for that individual,

7    and that's exactly what our Plaintiffs are seeking to do here.

8            THE COURT:  Very good.  I'm going to take it under

9    advisement.  I did read all of the briefings and so forth, so

10   I appreciate the good work.  Give us a little time.  We will

11   go through this in more detail, and I will give you a decision

12   in the near future, all right?  Anything else we can discuss

13   while we're here together?

14           MR. ENGDAHL:  No.  Thank you very much.

15           THE COURT:  Thank you.  Take care, everyone.

16

17

18

19

20

21

22

23

24

25

1

2                        REPORTER'S CERTIFICATE

3                     *   *   *   *   *   *   *

4      I, Erikia T. Schuster, RPR, Official Court Reporter for the

5    U.S. District Court, Southern District of Illinois, do hereby

6    certify that I reported with mechanical stenography the

7    proceedings contained in pages 1-31; and that the same is a

8    full, true, correct and complete transcript from the record of

9    proceedings in the above-entitled matter.

10

11   */S/ Erikia T. Schuster*                    1/29/2025
     IL CSR, RPR
12

13

14

15

16

17

18

19

20

21

22

23

24

25