## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LAUREN WEINER, *individually, as personal representatives of the estate of Matthew Silberman, and on behalf of all others similarly situated,*  )<br><br>Plaintiff,  )<br><br>vs.  )<br><br>LEGACY TOUCH, INC. and GLUECKERT FUNERAL HOME, LTD.,  )<br><br>Defendants.  ) | Case No. 3:24-CV-01827-DWD |

<u>**Memorandum & Order**</u>

**DUGAN, District Judge:**

In this putative class action, Plaintiff Lauren Weiner, individually as personal representative of the estate of Matthew Silberman, and on behalf of all others similarly situated, seeks relief against Defendants Legacy Touch, Inc. ("Legacy Touch") and Glueckert Funeral Home, Ltd. ("Glueckert") pursuant to the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILL. COMP. STAT. 14/15(a), *et seq.*, the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILL. COMP. STAT. 505/1, *et seq.*, and Illinois common law. Now before the Court are Defendants' Motions to Dismiss Plaintiff's First Amended Complaint. (Docs. 33, 34, 55). Plaintiff has responded to the motions (Docs. 36, 37), and Legacy Touch has replied (Doc. 55). The Court held a hearing on the motions on January 28, 2025.

## Background

In the First Amended Class Action Complaint (Doc. 6), Plaintiff alleges the following:

The remains of Plaintiff's deceased next-of-kin, Matthew Silberman ("Decedent") was placed into the care of a funeral home operated by Defendant Glueckert. (Doc. 6, p. 2). Without Plaintiff's prior consent, Glueckert captured and collected the Decedent's fingerprints, which it disclosed to Defendant Legacy Touch, who used the Decedent's personal information and fingerprints to create fingerprint keepsakes. (*Id*.). Legacy Touch then sent targeted advertising and sales materials to the Decedent's friends and family, including Plaintiff, encouraging them to buy the fingerprint keepsakes. (*Id*.).

From these facts, Plaintiff brings the following ten counts against both Defendants: (1) the failure to institute, maintain, and adhere to a publicly available retention schedule in violation of Section 15(a) of BIPA; (2) the failure to obtain written release before collecting, receiving, and/or obtaining biometric identifiers or information in violation of Section 15(b) of BIPA; (3) profiting from biometric identifiers or information in violation of Section 15(c) of BIPA; (4) the disclosure of biometric identifiers or information without obtaining consent in violation of Section 15(d) of BIPA; (5) violation of IFCA; (6) invasion of privacy; (7) tortious interference with the right to possess a decedent's remains; (8) civil conspiracy; (9) negligent misrepresentation; and (10) intentional misrepresentation. (Doc. 6).

## Legal Standards

Defendants seek dismissal of the First Amended Class Action Complaint under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) allows challenges to a pleading based upon the failure to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). To survive a Rule 12(b)(6) motion, which tests the sufficiency of the pleading but not its merits, the plaintiff must allege enough facts for the claim to be facially plausible. *Kloss v. Acuant, Inc.*, 462 F. Supp. 3d 873, 876 (7th Cir. 2020) (quoting *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 878 (7th Cir. 2012)); *Fosnight v. Jones*, 41 F.4th 916, 921-22 (7th Cir. 2022) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). There must be enough facts pled to draw inferences as to liability. *Fosnight*, 41 F.4th at 922 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A pleading need not allege "detailed factual allegations," but it must lift the claim above the speculative level. *Kloss*, 462 F. Supp. 3d at 876 (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals," supported by conclusions, are insufficient. *Trivedi v. Wells Fargo Bank, N.A.*, 609 F. Supp. 3d 628, 631 (N.D. Ill. 2022) (quoting *Iqbal*, 556 U.S. at 678). When ruling on motions to dismiss, courts accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Ent. Inc.*, 763 F.3d 696, 700 (7th Cir. 2014). The Court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in the plaintiff's briefing, "so long as

those facts are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted).

## Discussion

### A.    Plaintiff's Claims on behalf of the Decedent's Estate

As a preliminary matter, the Court notes that Plaintiff brings all of her claims as an individual on her own behalf and as personal representative of the estate of her deceased next of kin. Defendants argue that Plaintiff's claims brought on behalf of the Decedent's estate must be dismissed because they fall outside the limited scope of permitted claims for estates under Illinois law.

Under Illinois law, estates may bring claims under the Wrongful Death Act, 740 ILL. COMP. STAT. 180/1-2, and the Illinois Survival Act, 755 ILL. COMP. STAT. 5/27-6. A claim under the Wrongful Death Act may be brought "[w]henever the death of a person shall be caused by wrongful act" and the act "is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages." 740 ILL. COMP. STAT. 180/1. "[A] wrongful death action covers the time after death and addresses the injury suffered by the next of kin due to the loss of the deceased rather than the injuries personally suffered by the deceased prior to death." *Carter v. SSC Odin Op. Co., LLC*, 976 N.E.2d 344, 355 (Ill. 2012) (citation omitted). The Illinois Survival Act, on the other hand, does not create a statutory cause of action, but merely allows a decedent's representative to maintain any actions the decedent might have brought while alive. 755 ILL. COMP. STAT. 5/27-6; *see also Carter*, 976 N.E.2d at 355.

While Plaintiff purports to allege her claims as personal representatives of the Decedent's estate, she does not rebut Defendants' argument that she is barred from pursuing such claims. *See Kmart Corp. v. Footstar, Inc.*, 777 F.3d 923, 932 (7th Cir. 2015) (waiving arguments not raised). Also, Plaintiff does not attempt to bring claims under the Wrongful Death Act or the Illinois Survival Act. Nor does Plaintiff allege facts that would support such claims. Here, the alleged injuries are unrelated to the causes of Decedent's death, and only arose after death. Therefore, Plaintiff's estate claims plainly fall outside the scope of those permitted under Illinois law. To the extent Plaintiff's claims were brought as personal representatives of the estate of the Decedent, they must be dismissed. The Court will only consider Plaintiff's claims as they are brought on her own behalf.

### B.    ARTICLE III and BIPA Claims

Counts I through IV of the Complaint invoke Sections 15(a), (b), (c), and (d) of BIPA, which relate to the retention, collection, profit from, and disclosure of biometric identifiers and information.[1]

Defendants argue that Plaintiff lacks standing to bring her BIPA claims because she has no injury-in-fact. Specifically, Defendants argue that the next-of-kin of a decedent are not "persons aggrieved" under BIPA, and therefore, Plaintiff has no right to bring claims related to the deceased's biometric identifiers. Thus, Defendants raise a facial

---

[1] As defined in BIPA, "biometric identifier" includes retina or iris scans, voiceprints, hand scans, face geometry, and, as is relevant here, fingerprints, whereas "'[b]iometric information' means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILL. COMP. STAT. 14/10.

challenge to the BIPA claims under Rule 12(b)(1). *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction.). "[W]hen evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly-Iqbal*'s "plausibility" requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015).

Plaintiff has invoked federal jurisdiction, so she bears the burden of establishing standing under Article III of the Constitution. *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021). To establish standing, "a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Id.* (citing *Thole v. U. S. Bank N.A*, 590 U.S. 538 (2020); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016)). Defendants' argument focuses only on the first of the standing criteria: injury in fact.

The Seventh Circuit has found that plaintiffs have standing to bring BIPA claims where they have suffered an actual or imminent, concrete and particularized injury-in-fact. *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1153-55 (7th Cir. 2020) (Section 15(a) violation was an injury in fact); *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 620 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (June 30, 2020) (Section 15(b) violation was an injury in fact); *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1160 (7th

6

Cir. 2021), *certified question answered*, 2023 IL 128004, 216 N.E.3d 918, *as modified on denial of reh'g* (July 18, 2023) (Section 15(d) violation was an injury in fact); *but see Thornley*, 984 F.3d at 1248 (finding that plaintiffs did not have standing for their Section 15(c) claim where they "described only a general, regulatory violation not something that is particularized to them and concrete").[2] In those cases, however, the plaintiffs alleged that the violations involved their personal biometric identifiers or information. In contrast, the fingerprints at issue here belong not to Plaintiff, but to the non-party Decedent. Thus, this case presents an issue of first impression: can the next-of-kin of a decedent sustain claims under BIPA relating to the *deceased's* biometric information? For the reasons stated below, the Court concludes they cannot.

BIPA does not explicitly provide rights to deceased's remains. Nor does it specifically address in any way whether the protections of BIPA extend to deceased or his personal representative. The statute is seemingly constructed to protect the biometric data of living individuals. The Illinois legislature "emphasized that biometric data, unlike other types of sensitive information (such as Social Security numbers), is both unique and immutable." *Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 802 (N.D. Ill. Mar. 23, 2022). Because biometric information is unique to the person, it does not follow that Plaintiff can state a claim on behalf of another's biometric data, particularly if they are deceased.

---

[2] However, the Seventh Circuit suggested in *dicta* that there may be circumstances where a Section 15(c) violation would satisfy the injury in fact requirement for Article III standing. *Thornley*, 984 F.3d at 1247 (suggesting that a plaintiff might establish Article III standing by asserting: (1) "that by selling her data, the collector has deprived her of the opportunity to profit from her biometric information"; (2) "that the act of selling her data amplified the invasion of her privacy that occurred when the data was first collected, by disseminating it to some unspecified number of other people"; or (3) "that [the defendant] raise[d] the cost" she incurred in using social media sites.).

In *Rosenbach*, the court found the plain language in BIPA to limit the definition of a "person aggrieved" under the statute to a "person or customer whose biometric identifier or biometric information is subject to the breach." *Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1201 n.1 (Ill. 2019). Under the precedent in *Rosenbach*, a person is aggrieved in the legal sense when a "legal right is invaded by the act complained of or his pecuniary interest is directly affected by the decree or judgment." *Rosenbach*, 129 N.E.3d at 1205.

In this case, Plaintiff's own legal rights have not been invaded by Defendants' actions, nor have her pecuniary interests been affected. Additionally, it is not the biometric information of Plaintiff that is subject to any alleged breach, but that of her deceased relative. Under the statute, "any person aggrieved by a violation of the BIPA has a private right of action against an offending party." *Snider v. Heartland Beef*, 479 F. Supp. 3d 762, 766 (C.D. Ill. Aug. 14, 2020). The term "person" under BIPA is interpreted to mean an individual human being or natural person, which aligns with the general statutory presumption in Illinois law that, absent a more expansive statutory definition, the definition of "person" is understood to refer to natural persons, consistent with the plain and ordinary meaning of the term in Illinois case law. *Fuesting v. Uline, Inc.*, 30 F. Supp. 3d 739, 742-43 (N.D. Ill. Mar. 21, 2014); *People v. Christopherson*, 899 N.E.2d 257, 260 (Ill. 2008) ("[T]he plain and ordinary meaning of the term 'person' is 'an individual human being.'"). Consistent with this presumption, the Illinois legislature has, in the past, expressly indicated when it intends "person" to have a broader meaning. *Id*. The

legislature has not done so here. Therefore, under Illinois law, human remains would not be considered a "person" within the meaning of the statute.

The law does recognize a right of the next-of-kin of a decedent to possess a decedent's remains for the purpose of making appropriate disposition, but does not extend this property right beyond this purpose. *Betts v. Wigget*, 756 F. Supp. 3d 551, 555 (N.D. Ill. Nov. 8, 2024). Plaintiff offers no authority to suggest that Illinois law vests to another person a property right in a dead body. Moreover, federal statutes like the Native American Graves Protection and Repatriation Act (NAGPRA) explicitly define human remains as "cultural items" and do not recognize them as legally-recognized "persons" or entities with legally-protected interests under the statute. 25 U.S.C. § 3001(3); 25 U.S.C. §§ 3001-3013; 43 C.F.R. § 10.2 (2024). It follows, then, that neither Plaintiff nor Decedent are "persons aggrieved" under the statute, and Plaintiff thus does not have authority to bring claims on behalf of her deceased kin.

Plaintiff in this case is also not legally authorized representatives with authority to bring claims on behalf of Decedent's remains. Further, the "legally authorized representative" language in BIPA applies to a "living person or customer" such as a parent of a minor, a guardian, or a spouse. Because human remains are not persons or customers, Sections 15(a), (b), (c), and (d) do not apply such that Plaintiff fails to state a claim in Counts I-IV.

### 1. *Section 15(a)*

Section 15(a) of BIPA requires that "[a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the

public, establishing a retention schedule and guidelines for permanently destroying the
biometric identifiers or biometric information." 740 ILL. COMP. STAT. 14/15(a). Plaintiff
claims that Defendant Glueckert collected the Decedent's fingerprints and transmitted
them to Legacy Touch, and were therefore required by Section 15(a) to develop, publicize,
and comply with a retention schedule and destruction guidelines, but failed to do so.
(Doc. 6, pp. 20-21). For the reasons stated below, the Court concludes that Defendants did
not owe a duty to Plaintiff under BIPA's Section 15(a).

In *Bryant v. Compass Group U.S.A, Inc.*, the plaintiff sued the owner of cashless
vending machines at her workplace cafeteria, whose payment portal required customers
to create accounts and pay using their fingerprints. *Bryant*, 958 F.3d at 619. The *Bryant*
plaintiff alleged a Section 15(a) claim based on the vending machine company's failure to
develop a publicly-available written policy establishing a retention and destruction
schedule. *Id.* at 626. The Seventh Circuit found that the plaintiff "did not suffer a concrete
and particularized injury as a result of" the defendant's failure to post a publicly available
data-retention policy, "as the duty to disclose is owed to the public generally, not to
particular persons whose biometric information the entity collects." *Id.* Therefore, the
plaintiff did not have standing to bring the Section 15(a) claim. *Id.*

Similar to *Bryant*, Plaintiff does not assert that their rights were violated, but that
the violation of Decedent's BIPA rights harmed them. (Doc. 6, p. 30). Thus, under the
reasoning in *Bryant*, Plaintiff alleged violation by Defendants of the public's rights does
not constitute a concrete or particularized injury to Plaintiff personally, and she does not
have standing to bring a Section 15(a) claim. Plaintiff is alleging here a mere procedural

10

issue regarding Defendants' failure to publicly disclose, unlike in *Fox v. Dakkota Integrated Systems*, which distinguished the Section 15(a) claim from the "mere procedural failure to publicly disclose a data-retention policy" in *Bryant*. 80 F.3d at 1149. The Seventh Circuit found that the *Fox* plaintiff alleged a particularized and concrete injury regarding the failure of defendants not only to publicly disclose a data retention policy but also to comply with the retention schedule and thus had standing to bring a Section 15(a) claim. *Id.* at 1156. Therefore, for Plaintiff to have standing to assert a Section 15(a) claim, the allegations must go beyond a mere procedural violation and demonstrate a concrete and particularized injury, such as the unlawful retention of biometric data. *Hazlitt v. Apple Inc.*, 543 F. Supp. 3d 643, 650 (S.D. Ill. June 14, 2021). Furthermore, it is not clear that Decedent's BIPA rights were violated under Section 15(a), because as discussed above, privacy rights generally do not survive death, nor does the statute confer rights upon the deceased.

BIPA also does not apply extraterritorially. For BIPA to apply, the alleged violations must have occurred primarily and substantially in Illinois. *Wilk v. Brainshark, Inc.*, 631 F. Supp. 3d 522, 527 (N.D. Ill. Sept. 21, 2022). Defendant Legacy Touch argues that because it is a company located in Missouri, Section 15(a) therefore does not apply, and that Plaintiff does not allege that Legacy Touch possessed the biometric information in the state of Illinois. (Doc. 34, p. 15). Plaintiff instead argues that the Section 15(a) violations, under the "totality of the circumstances," occurred in Illinois: the collection of the fingerprints on Legacy Touch's behalf occurred in Illinois; the transmission of the data to Legacy Touch originated from Illinois, and the sales materials were directed at

residents of Illinois. (Doc. 36, pp. 13-14). The Court does not reach decision on the merits of whether BIPA applies extraterritorially in this case, or regarding Plaintiff having alleged facts sufficient to show a strong and substantial connection to Illinois such that BIPA applies to their claims. This is because, as discussed above, it is determined that Plaintiff lacks standing to bring Section 15(a) claims here because the duty to publish retention or destruction policies is owed to the public generally and Plaintiff has not sufficiently alleged a concrete and particularized harm. *Patterson*, 593 F. Supp. 3d at 802.

### 2.    *Section 15(b)*

Under Section 15(b) of BIPA, a private entity may not "collect, capture, purchase, receive through trade, or otherwise obtain" biometric identifiers or information without first obtaining written, informed consent. 740 Ill. Comp. Stat. 14/15(b). As discussed above, neither Plaintiff nor Decedent's human remains are "persons aggrieved" under BIPA, and thus Section 15(b) does not extend to biometric data collected from deceased individuals.

### 3.    *Section 15(c)*

Under Section 15(c) of BIPA, a private entity "may not sell, lease, trade, or otherwise profit" from a person's biometric identifiers or information in its possession. 740 Ill. Comp. Stat. 14/15(c). Defendant Legacy Touch argues that Plaintiff does not sufficiently allege that it profited from Decedent's biometric information because Plaintiff does not allege that she, or anyone else, purchased a fingerprint keepsake. Defendant argues that Section 15(c) does not prohibit an "attempt to profit," so Plaintiff has failed to show that Legacy Touch violated Section 15(c). (Doc. 34, pp. 15-16). Plaintiff responds

that Section 15(c) does not require "actual sales" and that the inclusion of "otherwise profit" in the statute includes Legacy Touch's efforts to profit from the biometric data. (Doc. 36, p. 10-11). The Court declines to reach decision on the merits of whether Defendant Legacy Touch's "attempt to profit" is included in the wording of "otherwise profit" in Section 15(c), because as discussed above, Plaintiff lacks standing to bring Section 15(c) claims on the basis that neither her, nor Decedent's remains, are "persons aggrieved" under the meaning of the statute.

### 4.    *Section 15(d)*

Section 15(d) of BIPA provides that "[n]o private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier" without consent. 740 ILL. COMP. STAT. 14/15(d). Defendant Legacy Touch argues that Plaintiff fails to allege that it impermissibly disclosed biometric identifiers/information in its marketing emails. Legacy Touch states that the Amended Complaint merely alleges that the Decedent's fingerprint images were uploaded to Legacy Touch's database, where a PIN, "essentially an account number," was generated for each Decedent, and then the PIN is sent in the marketing emails to family members. Legacy Touch claims that the PIN is not biometric information as defined by BIPA, so the Section 15(d) claim must be dismissed. (Doc. 34, pp. 16-17).

Plaintiff responds that the Amended Complaint states that the "PIN numbers associated with Plaintiff's Decedent's fingerprints constitute biometric information within the meaning of BIPA" and that Legacy Touch's solicitations "include each

13

deceased person's unique Legacy Touch PIN." (Doc. 36, pp. 12-23). Plaintiff asserts that whether the PIN falls within BIPA's definition is an issue of fact that is not suitable for dismissal at this time. (*Id*. at 13).

A PIN that links to fingerprint keepsakes would likely not be considered a "biometric identifier" or "biometric information" under BIPA, because a PIN is not a biological characteristic but rather a numerical code so it does not fall under the standard definitions protected by the statute. The Court does not reach a decision on the merits of whether a PIN that links to the fingerprint keepsakes is a "biometric identifier or biometric information" within the definition of BIPA, because as discussed above, Plaintiff lacks standing to bring Section 15(c) claims on the basis that neither her nor Decedent's remains are "persons aggrieved" under the meaning of the statute.

## C.    ICFA

To state a claim under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), a plaintiff must demonstrate (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019). Plaintiff's primary consumer fraud claims arise under the ICFA. ICFA "protect[s] consumers ... against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Vanzant*, 934 F.3d at 736 (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)). Deceptive or unfair practices include

any misrepresentation or the concealment, suppression or omission of any material fact. 815 ILL. COMP. STAT. ANN. 505/2; see also *Vanzant*, 934 F.3d at 736.

To assess whether a practice is "unfair" under ICFA, Illinois courts consider whether the practice (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 730 (7th Cir. 2017). "Deceptive" practices include any misrepresentation or the concealment, suppression, or omission of any material fact. *Vanzant*, 934 F.3d at 736. Courts have held that an ICFA claim may be based on a failure to disclose a material fact to the consumer. Therefore, the omission of a request for consent can be considered "deceptive" if it involves the suppression or omission of a material fact that the consumer would rely on.

Plaintiff alleges that Defendants practice of collecting Decedent's fingerprints without prior consent, and then requesting retroactive consent, constitutes an unfair practice under the ICFA. Plaintiff argues that such conduct involving the unauthorized collection of sensitive biometric data offends public policy and is oppressive and unscrupulous. Plaintiff also argues that Defendants' failure to inform her about the collection and use of Decedent's fingerprints until after the fact is deceptive.

Legacy Touch argues that Plaintiff does not allege that Legacy Touch engaged in an unfair and deceptive practice in violation of ICFA because she does not plead that she received a "retroactive request for consent." (Doc. 34, pp. 18-19). As Plaintiff "cannot premise an IFCA claim on supposed deceptive conduct that they expressly plead they were never exposed to," Legacy Touch argues it must be dismissed. (*Id.*). Additionally,

Legacy Touch states that Plaintiff's claim was not plead with the required particularity, such as the content of the advertising allegedly received, frequency, or dates of receipt. (*Id.* at 19). Finally, Legacy Touch argues that Plaintiff's claimed injury of "data storage space consumption, annoyance, and loss of time" or vague reference to "actual damage" is not sufficient to allege actual damages as required to state an ICFA claim. (*Id.* at 19-20).

Plaintiff has sufficiently alleged that Defendants' practice of collecting Decedent's fingerprints without prior consent and subsequently requesting retroactive consent constitutes an unfair practice under ICFA. Additionally, the omission of a request for consent can be considered deceptive if it involves the suppression or omission of a material fact. Still, however, Plaintiff must provide specific details and evidence to support their claims of actual damages resulting from emotional distress, data storage space consumption, annoyance, and loss of time to meet the requirements of ICFA.

To recover on a claim under ICFA, a plaintiff must plead and prove that the deceptive or unfair act caused actual damages. *Clark v. Receivables Mgmt. Partners, LLC*, No. 21-CV-00298, 2022 WL 767149, *4 (N.D. Ill. March 14, 2022). "The actual damage element of a private ICFA action requires that the plaintiff suffer 'actual pecuniary loss.'" *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 829-30 (7th Cir. 2018); *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). "A party may recover for noneconomic damages under ICFA if it also 'suffered an economic loss.'" *Clark*, 2022 WL 767149, *6 (quoting *Dieffenbach*, 887 F.3d at 830). "[D]amages must go beyond mere intimations of psychological harm or claims of nuisance." *Breeze v. Bayco Prods. Inc.*, 475 F. Supp. 3d 899, 908 (S.D. Ill. July 30,

2020); *see also Griffin v. U.S. Bank Nat'l Assoc.*, No. 15-CV-6871, 2019 WL 4597364, *6 (N.D. Ill. Sept. 23, 2019).

Here, Plaintiff has not sufficiently alleged the damages required to sustain a private ICFA action. Plaintiff's Amended Complaint fails to show how the alleged harms of emotional distress, data storage space consumption, annoyance, and loss of time spent accessing, reviewing, and discarding marketing materials constitute a pecuniary loss. Nor is there another alleged economic loss with a nexus to these alleged damages. The alleged damages amount to the psychological harm and nuisance claims that courts in this District and others within the Seventh Circuit have found insufficient as a basis for a claim under ICFA. Further, Plaintiff is not entitled to any "benefit of the bargain" damages (Doc. 36, pp. 15-16, n. 5) because she does not allege that she purchased any of the products containing biometric information that were marketed to her. Accordingly, Plaintiff's ICFA claim fails and must be dismissed.

### D.    Invasion of Privacy

Plaintiff's claim for inclusion upon seclusion is also not viable.[3] Pleading of such a claim must show that "(1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) the intrusion caused the plaintiff anguish and suffering." *Alicea v. Cnty. of Cook*, 88 F.4th 1209, 1218 (7th

---

[3] While Plaintiff labels this claim as "invasion of privacy," a tort not recognized under Illinois law, she provides the elements for a claim of intrusion upon seclusion (Doc. 36, p. 16), and the Court will construe Plaintiff's claim as such for the purposes of this motion.

Cir. 2023) (citing *Spiegel v. McClintic*, 916 F.3d 611, 619 (7th Cir. 2019); *Busse v. Motorola,
Inc.*, 813 N.E.2d 1013, 1017 (Ill. App. Ct. 2004)).

Plaintiff argues that Defendants' conduct, which involved the collection of
Decedent's fingerprints and then soliciting the Decedent's family members with
marketing materials, constitutes a "highly offensive intrusion upon a private matter."
(Doc. 36, pp. 17-18; Doc. 37, pp. 13-14). Further, Plaintiff states that she adequately alleged
privacy harms and emotional distress. (*Id*.).

The Court finds that the alleged conduct does not constitute a "highly offensive
intrustion upon a private matter" and Plaintiff fails to allege an "actual injury." First,
there was no "private matter" in this case. Plaintiff does not have a privacy interest in
someone else's biometric information and cannot raise an invasion of privacy claim on
behalf of the estate. Furthermore, privacy rights do not accrue after death. *Maritote v.
Desilu Prods., Inc.*, 345 F.2d 418, 419–20 (7th Cir. 1965) (holding that family members could
not pursue privacy claim on their own behalf or that of a decedent for an invasion
involving only decedent's privacy, noting it was "anomalous to speak of the privacy of a
deceased person"); *Ravellette v. Smith*, 300 F.2d 854, 857 (7th Cir. 1962) (finding that
decedent had no privacy claim over a blood sample taken after death because right to
privacy was "personal" and "could not survive his death" or be validly pursued by next
of kin).

Even if the fingerprint data of a deceased person is private, Plaintiff argues that
the manner in which decedent's fingerprints were extracted, which was instructed by
Legacy Touch and executed by Glueckert, amounts to a highly offensive intrusion upon

a private matter. These instructions provided that Decedent's finger be pressed onto the scan pad at different pressures to obtain the best quality fingerprint scan. (Doc. 36, p. 17; Doc. 37, p. 13). However, these methods of fingerprint scanning of a decedent are not enough to arise to the "highly offensive" standard. Examples of claims that meet this high standard are "invading someone's home, illegally searching someone's shopping bag in a store, eavesdropping by wiretapping, peering into the windows of a private home, or making persistent and unwanted telephone calls." *Benitez v. KFC Nat. Mgmt. Co.*, 714 N.E.2d 1002, 1006 (Ill. App. Ct. 1999).

Finally, Plaintiff has failed to allege she was actually injured by Defendants' alleged conduct. "Illinois law does not presume injury" and requires "an actual injury in the form of, for example, medical care, an inability to sleep or work, or a loss of reputation or integrity in the community." *Alicea*, 88 F.4th at 1218 (quoting *Spiegel*, 916 F.3d at 619) (holding that the plaintiff's allegations of "general anguish and embarrassment from being recorded while using the holding cell toilet . . . [fell] far short of state law requirements."). For these reasons, Plaintiff's claim against Defendants for intrusion upon seclusion also fails.

### E.    Tortious Interference with the Right to Possess Decedent's Remains

Plaintiff claims that she, as next of kin, possesses the right to the possession of her deceased relative's remains. Tortious interference with the right to possess a decedent's remains involves wrongful actions that disrupt plaintiffs' ability to control the disposition of a deceased person's body. The relevant question is whether the collection of Decedent's

fingerprints harm Decedent's body or deny Plaintiff the right to provide a proper burial or cremation.

Defendants argue that this claim must be dismissed because Plaintiff does not allege any destruction, loss, or damage to their loved one's remains, and that her allegations regarding the Decedent's fingerprint scans "fall far short of establishing any interference with their right to possess and 'make appropriate disposition thereof' of their loved one's remains." (Doc. 34, pp. 24-25; Doc. 33, pp. 10-11). Plaintiff argues that Defendants "manipulat[ed] the remains of Plaintiff's deceased relatives to capture fingerprints" and "exploit[ed] their unauthorized use for financial gain." (Doc. 36, p. 22).

Although Illinois law provides "no property right in a dead body," it does recognize a limited right by next of kin to possession of a decedent's body "to make appropriate disposition thereof, whether by burial or otherwise." *Cochran v. Securitas Sec. Servs. USA, Inc.*, 93 N.E.3d 493, 497 (Ill. 2017) (quotations and citations omitted). Courts recognize this right where a defendant's negligence results in a deceased person's body being harmed or denied a "proper burial or cremation." *Id.* at 503 (citing Restatement (Second) of Torts § 868 cmt. d (1979)) (holding that the trial court erred in dismissing the plaintiff's claim for tortious interference with the right to possess a corpse where the undertaker negligently mislabeled and accidentally cremated a body). *Mensinger v. O'Hara*, 189 Ill.App. 48, 50, 1914 WL 2797, at *1 (Ill.App. 1 Dist. 1914) (claim alleging mental suffering alone as a result of the removal of deceased wife's hair, rendering her body unfit to be viewed, found to be actionable)

Here, Plaintiff's allegations that Defendants manipulated the remains of Plaintiff's deceased relatives to obtain fingerprint scans falls short of supporting a claim for tortious interference with the right to possess a decedent's remains. Nothing in Plaintiff's Complaint alleges any activity that rises to the level demonstrating interference with her ability to make appropriate disposition of the remains of Decedent. Accordingly, Plaintiff's claim for tortious interference with the right to possess a decedent's remains also fails.

### F.    Negligent Misrepresentation

Under Illinois law, negligent misrepresentation requires six elements: (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth; (3) an intent to induce the other party to act; (4) reliance on the false statement; (5) resulting damage; and (6) a duty to communicate accurate information. *Tricontinental Indus., Ltd. v. Pricewaterhouse Coopers, LLP*, 475 F.3d 824, 833–34 (7th Cir. 2007). Plaintiff argues that she alleges all the required elements of negligent misrepresentation: (1) that Legacy Touch encouraged Glueckert to "deceive or mislead consumers by asking them for permission to take the fingerprints after they have been collected" which constitutes a false communication, (2) Defendants intended Plaintiff to act, and (3) Plaintiff acted in reliance on the truth of those statements. (Doc. 36, p. 19).

Defendant Glueckert argues that Plaintiff only makes conclusory allegations as to what the "false representations" or "omissions" were, or the negligence by the person in making them. Glueckert also argues that none of Plaintiff's allegations show that it induced Plaintiff to act, or that Plaintiff acted in reliance on any false representation or

omission. Finally, Glueckert argues that Plaintiff only alleges that she "suffered damages, including emotional distress, loss of trust, and other economic and non-economic losses." (Doc. 33, p. 15).

Legacy Touch argues that Plaintiff does not allege a false statement or an intention to induce Plaintiff to act, and that Plaintiff could not have relied on any communications made by Legacy Touch in making burial decisions because she did not even know of Legacy Touch's alleged involvement until the marketing materials were sent well after the fact. (Doc. 34, pp. 18-19). Finally, Legacy Touch states that Plaintiff failed to plead more than simply emotional damages. (*Id.*, p. 19).

The Court agrees with Defendants that Plaintiff's pleading of damages is insufficient to support her claim for negligent misrepresentation. Plaintiff contends that she has alleged harm in addition to emotional damages "in the form of data storage space consumption, annoyance, and loss of time spent accessing, reviewing, and discarding such mail, as well as the unauthorized capture and subsequent used of a deceased's biometric data." (Doc. 37, p. 18). As discussed *supra*, these alleged harms are not cognizable as actual damages. The Illinois Supreme Court has "recognized that 'there exists no broad duty to avoid misrepresentations that cause only emotional harm.'" *Kim v. State Farm Mut. Auto. Ins. Co.*, 199 N.E.3d 737, 753 (Ill. App. Ct. 2021). As such, Plaintiff's claims for negligent misrepresentation against both Defendants must fail.

Although Plaintiff's failure to plead more than emotional damages is dispositive of her claim, it also fails for another reason. Illinois only recognizes a duty owed by a defendant to communicate accurate information to plaintiffs where (1) conveying false

22

information results in physical injury to a person or harm to property; or (2) one is in the business of supplying information for the guidance of others in their business transactions. *BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837, 854 (N.D. Ill. 2021). Here, Plaintiff does not allege to have suffered any physical injury or harm to property or property interest, and neither of the Defendants are alleged to be in the business of providing information for the guidance of others in their business transactions. For this second and distinct reason, Plaintiff's claim of negligent misrepresentation fails.

### G.    Intentional Misrepresentation

Claims for intentional misrepresentation require the following elements be met: "(1) a false statement or omission of material fact; (2) knowledge or belief of the falsity by the party making it; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance." *In re Boeing 737 MAX Pilots Litig.*, 638 F. Supp. 3d 838, 864 (N.D. Ill. 2022). An intentional misrepresentation claim must also meet the heightened pleading standards of Rule 9(b). *Id.* at 869-70.

For the same reasons provided above regarding Plaintiff's insufficient pleading of damages, her claim for intentional misrepresentation also fails. *See Lewis v. Lead Industries Association*, 178 N.E.3d 1046, 1056 (Ill. 2020) (holding that "plaintiffs were required to establish actual economic loss as an essential element of their claim of intentional misrepresentation.").

### H.    Civil Conspiracy

Plaintiff also brings a claim for civil conspiracy, alleging that Defendants conspired to unlawfully capture and use the fingerprints of Decedent. (Doc. 6, pp. 48-49). Civil conspiracy claims necessitate an underlying wrongful act; without a valid tortious interference claim, the civil conspiracy claim may also fail. *Nat'l Experiential, LLC v. City of Chicago*, 590 F. Supp. 3d 1116, 1130-31 (N.D. Ill. Mar. 9, 2022). Here, in light of the dismissal of Plaintiff's underlying claims, her claim for civil conspiracy fails as well.

### Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants Legacy Touch and Glueckert Funeral Home's Motions to Dismiss Plaintiff's First Amended Complaint. As such, all of Plaintiff's claims against Legacy Touch and Glueckert Funeral Home are **DISMISSED WITHOUT PREJUDICE**. Plaintiff is directed to file, if at all, an Amended Complaint on or before August 27, 2025. Should Plaintiff fail to file an Amended Complaint by August 27, 2025, this matter will be dismissed with prejudice.

**SO ORDERED.**

Dated: August 7, 2025

/s *David W. Dugan*

_____
DAVID W. DUGAN
United States District Judge

24